**Charles Sumner BIRD**

v.

**UNITED STATES of America.**

**Civ. A. No. 55–370.**

United States District Court
D. Massachusetts.

March 22, 1956.

---

**570**

Edward C. Thayer, E. Barton Chapin, Boston, Mass., for plaintiff.

Arthur I. Weinberg, Asst. U. S. Atty., Boston, Mass., Mamie S. Price, Atty., Dept. of Justice, Tax Division, Washington, D. C., for defendant.

WYZANSKI, District Judge.

### I.

This is a suit for refund of income taxes in the principal amount of $43,-515.55, assessed and paid as a deficiency for the year 1944.

The ultimate question is whether a taxpayer (on the cash receipts basis) having received in 1944 a refund and interest from the Government on account of a deficiency and interest erroneously collected from him in 1943 (on account of earlier tax years), and having in his original 1943 return deducted the interest from his gross income, can be compelled by the Government to include in his 1944 gross income his receipt of the deficiency and interest, or can instead exercise an election to reopen and amend his 1943 return to set the 1944 receipt off against the theretofore claimed deduction of interest in that year.

The plaintiff and the circumstances are different from but cognate to those involved in Bartlett v. Delaney, D.C.D. Mass., 75 F.Supp. 490; 1 Cir., 173 F.2d 535, certiorari denied 338 U.S. 817, 70 S.Ct. 59, 94 L.Ed. 495.

### II.

The basic statutes follow:

§ 23 of the Internal Revenue Code of 1939, 26 U.S.C.A., states with respect to deductions from gross income that "In computing net income there shall be allowed as deductions: * * *

"(b) *Interest*. All interest paid or accrued within the taxable year on indebtedness * * *."

§ 41 of the Internal Revenue Code of 1939 states the general rule that "The net income shall be computed upon the basis of the taxpayer's annual accounting period * * *."

§ 42 of the Internal Revenue Code of 1939 as amended by § 114 of the Revenue Act of 1941, c. 412, 55 Stat. 687, (stipulating the period in which items of gross income shall be included) provides, "(a) *General rule*. The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer * *."

Coupled with the foregoing statutory provision is the direction in § 43 of the Internal Revenue Code of 1939 (stipulating the period for which deductions and credits shall be taken) which reads as follows:

"The deductions and credits * * * shall be taken for a taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to

clearly reflect the income the deductions or credits should be taken as of a different period."

### III.

The taxpayer is on a cash basis. In 1937 as a shareholder in Bird & Sons, Inc., a Massachusetts corporation, he received shares of preferred stock in that corporation; but reported no income with respect to that transaction in his tax return for that year. In 1940 the Commissioner of Internal Revenue determined that there had been a $167,648.89 deficiency in that 1937 income tax.

The taxpayer filed with the then Board of Tax Appeals a petition for re-determination. In a companion case, Bass v. Commissioner, 45 B.T.A. 1117, presenting similar issues, arising in connection with same dividend of preferred stock, the Board of Tax Appeals sustained a parallel deficiency in December 1941. To stop the running of interest, the taxpayer at bar in February 1942 paid the amount of his asserted deficiency with interest of $39,165.54. In June 1942 the Court of Appeals for the First Circuit, 129 F.2d 300, reversed the decision of the Board of Tax Appeals in the Bass case. The government did not apply for certiorari.

Relying upon the reversal in the Bass case, the Tax Court on September 30, 1943 decided that the instant taxpayer, Bird, had made in 1942 an overpayment of $162,139.47 in connection with the income tax for the year 1937. As a result of this decision, this taxpayer in 1944 received a refund of the deficiency tax which had been assessed and collected in 1943, and at the same time he received interest of $37,878.45 applicable to the payment of that deficiency.

The taxpayer in his federal income tax return for 1943, which included the year 1942 (pursuant to the Current Tax Payment Act of 1943, c. 120, 57 Stat. 126, 26 U.S.C.A.Int.Rev.Acts, page 385), claimed a deduction of $39,165.54 which he had paid in 1943 as interest on the deficiency assessed for 1937. He paid the tax liability computed on the basis of that and other items reported in the return.

In his return for 1944 the taxpayer did not include in his reported income interest of $37,878.45 which had been refunded to him in that year on the deficiency previously assessed for the year 1937. He did attach a statement to the 1944 return, reporting receipt of the interest item and offering to execute a waiver extending the collection period for the year 1942.

In March 1948 the taxpayer filed an amended return for 1942 eliminating $37,878.45 of interest claimed as a deduction for 1942 in his original return, and reported an increase of $5,889.88 in tax liability over that reported in the original return. This amount was submitted in the form of a check with the amended return. The local Boston Collector of Internal Revenue cashed this check.

In January 1950, upon audit of the taxpayer's returns for the years 1942 through 1945, the Commissioner of Internal Revenue rejected the so-called amended return for 1942; he determined an overassessment for that year; and he determined that for the year 1944 there was a deficiency of $43,012.71. That overassessment and that deficiency resulted from, among other items, the exclusion of the interest item of $37,878.45 from the taxpayer's income for 1942 and inclusion thereof in his income for 1944. The Commissioner credited the overassessment against the deficiency.

In July 1950 the taxpayer paid the remainder of the deficiency in 1944 with interest thereon. In March 1952 the taxpayer filed a claim for refund of the amount he estimated as the deficiency and interest for the year 1944 collected from him as a result of the inclusion in his income for that year of the interest item of $37,878.45 refunded to him in 1944. The Commissioner disallowed the claim for refund on November 15, 1954. Acting in due time, the taxpayer in April 1955 brought suit.

### IV.

The scope of the issue tendered by the taxpayer here is much narrowed by the decision of the Court of Appeals affirm-

ing the decision of this Court in the Bartlett case already cited. As will be seen by inspecting the opinions in the Bartlett case, the Court of Appeals and this Court dealt with other stockholders who received preferred stock of this same type in the same year and who were involved in general in similar proceedings contesting the assessment of tax deficiencies with respect to such receipts.

In Bartlett both this Court and the higher court concluded that the taxpayers there involved were not entitled to alter their tax returns for 1942 and 1943. The taxpayers there involved in their 1942 returns originally deducted the interest they had paid the Government, and in their 1943 returns originally reported the interest refunded to them by the Government; thereafter they sought to eliminate from the 1942 return the payment which had there been claimed as a deduction and to eliminate from the 1943 return the receipt which had there been set forth as an addition to income. But the Courts held those taxpayers to their original election as to how to treat the items of payment and receipt, and concluded that alterations were not permitted because there had been an election; because there was no statutory system authorizing without the Government's consent the filing by taxpayers of amended tax returns designed to offer new methods of computation, accounting, or allocation preferred by a taxpayer on second thought; and, above all, because accounting was on an annual basis, and elections made in one year could not be revised on the basis of information available only in a succeeding year.

In the present case there is no doubt that the taxpayer in 1943 claimed and received the full benefit of the payment of interest to the government as a deduction in his 1942 tax return. In this respect he is like the taxpayers in the Bartlett case. But unlike the taxpayers in the Bartlett case, Mr. Bird in filing his income tax return for the year 1944 neither originally, nor at any

subsequent time, included in his calculations or self-assessment the refunded interest which was received by him in that year from the government. Instead of including that receipt in his gross income, he included in a statement attached to his return a report that he had received the refunded interest, and, in fact, he suggested that the Commissioner determine a deficiency in tax for 1942.

Moreover, in 1943 the taxpayer filed an amended tax return attempting to expunge from his 1942 accounting the deduction he had there taken for the interest he had paid the government. Attached to the amended return, as has already been pointed out, was a check. The Collector's office in Boston did physically accept the amended return and did deposit with other tax funds, rather than hold in suspense, the amount represented by the accompanying check. But the Collector, his assistants, and superiors, did not then purport to audit the return or to take any formal action beyond the physical steps heretofore described.

### V.

■ The Collector's receipt of funds under these circumstances, their application to a taxpayer's liability, and their deposit in the general tax funds do not by themselves represent an accord and satisfaction, or any similar final determination binding upon the Government as the recipient of the funds. Cf. Thorsell v. Commissioner, 13 T.C. 909, 915.

Hence there is no basis for claiming that the Commissioner, the Collector, the Government, or anyone else representing the taxing authority has assented irrevocably to the recomputation by the taxpayer of his return for 1942. Absent such assent, the issue really narrows down to two related points. The first is whether having once made an election as to how to treat a particular item of expense, the taxpayer can, after the close of the accounting period, and the time of filing his original tax return for that period, revise his election, particularly

in the light of additional information he gains through judicial decisions and other events subsequent to the accounting period. Related to this point, and, indeed, another form of the same question, is whether once he has filed a return for an accounting period, a taxpayer has the right to compel the Government to accept not merely physically, but legally, an amended tax return showing a different election of a particular item, when such difference is governed by facts not available in the accounting period.

While there are some appealing considerations in favor of allowing in so harsh a case as this a taxpayer to avoid what appears to be the inequity of his first election, and to compel the taxing authorities to take from him an amended return which merely sets forth corrections in the taxpayer's accounting consequent upon the admission of the taxing authorities of their earlier errors, I do not feel free to permit these considerations to have weight against the specific holdings which the Court of Appeals and this Court made in the cognate Bartlett case. Not merely the language, not merely the *ratio decedendi*, but the whole thrust of the Bartlett case are fatal to Bird's contention. The rule is that a taxpayer who in his tax return has made an election cannot, without the Government's consent, revise his election on the basis of facts developing after the accounting period.

One further word should be said about why an election by the taxpayer may have been of importance in this particular case. Ordinarily when a taxpayer on a cash receipts basis erroneously pays interest in one year and recovers the payment from his creditor the next year, there would be no doubt that the law requires him to keep the two entries separate and account for them in different taxable years. But it might be that this general rule would not apply where the creditor is the Government and the Government exacts payment of the interest against an unwilling taxpayer in one year, and returns it to him in the following year, unless the taxpayer by his election preserved the separate accounting period through reporting as a deduction in the first year the interest he then paid.

Judgment for the defendant with costs.