Reid G. JONSON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16784

United States Court of Appeals
Ninth Circuit.

Aug. 24, 1960.

Jack R. Dean and Harvey Erickson, Spokane, Wash., for appellant.

Dale M. Green, U. S. Atty., Robert L. Fraser, Asst. U. S. Atty., Spokane, Wash., for appellee.

Before CHAMBERS and MERRILL, Circuit Judges, and EAST, District Judge.

EAST, District Judge.

## Jurisdiction

Appellant was indicted [1] on July 20, 1959, and was thereafter convicted by jury on two counts of income tax evasion for the tax years of 1955 and 1956, in violation of 26 U.S.C.A. § 7201. A judgment of conviction was entered and this appeal is therefrom. This Court (Title 28 U.S.C.A. § 1291) has jurisdiction.

## Specification of Errors

A detailed specification of the errors relied upon are as follows:

(1) That the trial court erred in failing to grant the defendant's Motion for Judgment of Acquittal for the charge of violation of Title 26 U.S.C.A. § 7201, Case No. C–8546, at the conclusion of the prosecution's case.

(2) That the trial court erred in failing to grant the same motion at the end of all the testimony.

(3) That the trial court erred in failing to render a judgment of acquittal or to grant a new trial in response to the motion for new trial filed therein.

Appellant's only argument in this appeal is that he was entitled to a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., on the ground that as a matter of law there was a full compromise of all tax liability, criminal and civil, prior to return date of the indictment. Title 26 U.S.C.A. § 7122—Compromises.

## Factual Situation

Appellant had been employed by the United States Government for several years preceding the indictment in a supervisory capacity as a military-installation civilian engineer near Spokane, Washington, and at the same time he was a party to an architectural contract with Walter G. Meyers & Son, engaged in government contracting, agreeing to do architectural work for the contractor at a compensation equal to 3½% of contract prices. The admitted unreported income of Appellant came from Walter G. Meyers pursuant to this contract.

Appellant was first investigated by a representative of the Internal Revenue Service during June, 1957. This interview dealt with the auditing of travel expenses and a refund on account thereof. During January of 1958, a member of the intelligence unit of the Internal Revenue Service commenced an "investigation which was continual from January, 1958, until November, 1958".

Appellant asserts that he "believed that the agents with whom he was dealing were endeavoring to help him compute his tax so that it could be paid."

Appellant was advised by a letter of the Internal Revenue Service, under date of December 18, 1958, that he was under investigation for willful tax evasion. A

1. A second indictment, alleging violation of Title 18 U.S.C.A. § 434 (selling of contracting officer's influence) resulted in an order of dismissal.

second letter of similar advice was received by Appellant "about the 4th of January, 1959," following which Appellant visited the Seattle office on January 8, 1959.[2] On April 17, 1959, a special agent of the Federal Bureau of Investigation took a signed statement from the Appellant, concerning itself solely with a possible violation, later dealt with in the second indictment.

It was following this interview that Appellant "for the first time obtained counsel and sought advice about his tax problems," whereupon he was advised to and did pay the tax,[3] per his following mailed letter: (Letter)

> "June 23, 1959
> "Spokane, Washington
> "Director of Internal Revenue
> "Tacoma, Washington
> "Re: Reid G. and Arlene J. Jonson
> "N. 4020 Hemlock Street
> "Spokane, Washington
> "Dear Sir:
>
> "Enclosed herewith are amended returns for 1955 and 1956. Also a cashier's check for $4830.88 to cover the delinquency with interest at 6% from the date the tax was due, plus a 5% penalty for failure to pay on account of negligence. Section 6653 (a), I.R.C., 26 U.S.C.A. § 6653(a).
>
> "As indicated by these amended returns certain monies received from Meyers Construction Company of Spokane were not reported in 1955 and 1956 on the 1040 forms. It was my belief that these amounts should have been reported after receiving the full amount from Meyers Construction Company. They still owe about $2300.00 which they have not yet paid. I have been anticipating the receipt of this money but it has not yet materialized.
>
> "On January 15, 1958, agents Clifford Rice and another agent Meldin Smith, were consulted by me. I called Mr. Rice and told him that I had some income which I believe should have been reported but was inadvertently omitted. I took my records down to him and he asked to keep the records to compute the tax.
>
> "In October or November Mr. Meldin Smith and Mr. Turk of the Spokane Internal Revenue Office questioned me about my earnings. Smith said that he had to send his computations in to Seattle for verification and that I would then get a bill. Since this procedure has taken considerable time and the interest meanwhile accumulating, I desire to pay the penalty and interest to date to avoid further interest charges. If there has been any error in these computations please advise.
>
> "Since I do not have my books available, there are certain records which are unavailable to me which would entitle me to additional exemptions. I desire however to file the amended returns on the basis of the information available so that the matter may be terminated. I have been advised that the interest did not terminate by my going to the revenue agents and turning the rec-

---

2. Appellant's direct testimony, Tr. 265:
   "Well, when I received the second letter my wife brought out the other letter that was from San Francisco and one of the letters said that I was going to be prosecuted and the other one said, 'We are thinking about prosecuting you,' and I was pretty concerned, naturally, and my biggest concern on prosecution was that this, I mean, I would lose my license, my professional ratings, I would lose my right to practice as a professional man by this. So I thought that he indicated I could talk to him, to come over, I called him and 'I would be in Seattle, anyway, and I would sure like to talk to you,' I said."

3. Appellant's direct testimony, Tr. 273:
   "A. Well, I immediately went to Mr. Dean, who called Mr. Erickson and explained the whole thing to them.
   "Q. Well, you don't need to relate the conversation, what did you do? A. I paid the tax, they said to pay the tax.
   "Q. Did you pay the penalties? A. Yes, sir, I paid the penalty. We sat down and computed the interest and the penalties and the tax and I went and drew my money out of the bank and got a cashier's check and mailed it in."

ords over and indicating a desire to pay the tax. Since I have discovered that, I have a desire to get this over with. The money to pay this tax had been reserved.

"Yours very truly,
"Reid G. Jonson"

At no time prior to the trial had the Internal Revenue Service ever made any assessment for any unpaid taxes against Appellant.

The District Director at Tacoma, Washington, received the Letter, together with the enclosures mentioned, in due course, and credited the proceeds of the cashier's check in the amount of $4,830.88 to the Director's "Advance Payments."

### Developments at the Trial

The Letter, enclosed amended tax returns, and method of handling the proceeds of the cashier's check were offered into evidence by the Appellee as part of its case in chief. Appellant testified in his own behalf and offered evidence at the trial. However, at no time did he testify that he had compromised his criminal tax liability or had attempted to do so, or that the agents of the Internal Revenue Service ever intimated or offered any suggestion of a compromise.

Appellant's motions referred to in the specifications of error above were timely made.

Regarding the Letter, enclosed amended returns and tendered payment, the District Court instructed the jury as follows:

"You are instructed that there is a distinction between the civil liability of a defendant and the criminal liability of a defendant under the income tax laws of the United States. This is a criminal case. The defendant is charged under the law with the commission of a crime, and the fact that he has or has not settled the civil liability for the payment of taxes claimed to be due to the United States is not to be considered by you in determining the issues in this case, except as it may throw some light on the intent of the defendant."

Appellant did not except to this instruction and did not request of the District Court any proposed instruction covering an issue of compromise settlement of criminal liability other than two requested instructions referring only to the element of "intent," nor did he except to the District Court's failure on its own motion to instruct the jury on any factual issue of compromise settlement of criminal liability.

### Conclusions

█ There can be no doubt but that any substantial evidence, whether adduced through the Government's or the defendant's case which will tend to support a defense of compromise settlement of criminal tax liability, pursuant to an enabling statute, presents a question of fact for the jury. Rau v. United States,[4] 2 Cir., 1919, 260 F. 131, 134.

█ And this reviewing Court in exercising its guardianship might notice it to be a defect "affecting substantial rights," even in absence of request for such, for a trial court to fail to instruct a jury on the issue of an alleged compromise settlement of criminal liability being a bar to prosecution if such an issue is genuinely raised by the evidence; however, such cannot be said here, as there is no such genuine issue of fact.

It is not necessary for us to determine whether as a matter of law a compromise settlement of a criminal tax liability in order to constitute a bar to a subsequent prosecution shall be in "full dress" compliance with the statute, as claimed by the Appellee citing Botany Worsted Mills v.

4. "If the defendant, in good faith, made the payment of the tax and penalty for the purpose of compromising the impending action, he is entitled to full protection and the benefits derived therefrom. If the money was accepted with the *promise of immunity* from further punishment in a criminal proceeding, it would be a complete defense to this indictment. Willingham v. United States, 208 Fed. 137, 127 C.C.A. 263." [Italics supplied.] Relied upon by Appellant.

United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379.

As from the facts before the District Court and the record here, there cannot be even a tongue-in-cheek suggestion of a semblance, let alone a substantial compliance by Appellant, with Title 26 U.S. C.A. § 7122. We have only

    (a) Appellant's Letter; and

    (b) The retention of the proceeds of the cashier's check by the Director

as evidence of

    (a) An offer of compromise by the Appellant; and

    (b) Acceptance of the offer of compromise by Appellee

upon which to build the claimed defense of compromise settlement of criminal liability on the part of Appellant. Neither of which is evidence of anything other than, as Appellant testified

    (a) The late payment; and

    (b) Receipt of overdue taxes and penalties—

no distortion of the English language nor counsel-envisaged mala fides on the part of the revenue agents to the contrary.

"The (Director's) receipt of (proceeds of the cashier's check) under (the above) circumstances, their application to a taxpayer's liability and their deposit in the general tax funds do not by themselves represent an accord and satisfaction, or any similar final determination binding upon the Government as the recipients of the funds. Cf. Thorsell v. Commissioner, 13 T.C. 909, 915." Bird v. U. S., D.C.Mass.1956, 141 F.Supp. 569, 572, affirmed 1 Cir., 1957, 241 F. 2d 516, 518.

The following language of Judge Augustus N. Hand in United States v. McCormick, 2 Cir., 1933, 67 F.2d 867, 868, best describes the position of Appellant before the jury:

"* * * But we find nothing in the present record to indicate that the payment was made to compromise claims for criminal liability. The most that can be said for de-

fendant on account of his disclosure and payment of taxes is that such acts tended to show innocence. The argument is stronger that they only showed a desire to place himself in a safer position when it had become certain that his illegal acts were about to be discovered * * *."

In this respect, the District Court's mentioned instruction to the jury gave Appellant his full reward.

Each of Appellant's specifications of error is without merit. The judgment of conviction shall stand.

Affirmed.