**Michael and Betty T. KEARNEY, Plaintiffs,**

v.

**Harold B. A'HEARN et al., Defendants.**

United States District Court
S. D. New York.
Sept. 7, 1961.

On Motion For Summary Judgment
Feb. 26, 1962.

---

Michael Kearney, Fort Lee, N. J., for plaintiffs.

Robert M. Morgenthau, U. S. Atty., for S. D. of New York, for defendants; Morton L. Ginsberg, Asst. U. S. Atty., of counsel.

LEVET, District Judge.

In an action brought pursuant to 28 U.S.C.A. § 1346(a), plaintiffs-taxpayers, husband and wife, seek the following divers relief: An injunction restraining the defendant District Director Moe and his agents from collecting an alleged income tax deficiency of plaintiffs for the taxable year 1953; a writ of mandamus requiring said Director to issue a statutory deficiency notice for the plaintiffs' taxable year 1953; and judgment for plaintiffs in the total amount of $475.95, together with interest, costs and disbursements of this action.

By means of an order to show cause, plaintiffs presently move for a prelim-

inary injunction, pursuant to Rule 65, Federal Rules of Civil Procedure, Title 28 U.S.C.A., restraining the collection of said alleged tax deficiency, and for a writ of mandamus compelling the issuance to plaintiffs of a deficiency notice covering their alleged tax deficiency for 1953. On May 26, 1961, Judge Metzner of this court issued a temporary order restraining further efforts to collect the alleged aforementioned deficiency pending a hearing on this motion.

Defendants, in turn, have moved to dismiss the instant complaint with prejudice under Rule 12(b) (1), (2) and (6) of the Federal Rules of Civil Procedure, Title 28 U.S.C.A.

The facts [1] herein appear to be substantially as follows:

On March 13, 1954, plaintiffs filed a so-called "tentative" joint income tax return for the taxable year 1953 on Form 1040, which stated no tax was due, and requested 90 days to secure data for completion of the return. Having been granted the 90-day extension, plaintiffs filed a second Form 1040 return on June 14, 1954 which listed withheld income taxes in the amount of $404.91 and showed a tax balance due of $4,136.97. Attached thereto was the initial return previously filed on March 13, 1954, which the Internal Revenue Service had stamped and returned to plaintiffs.

In a notice of assessment dated August 5, 1954 (see Exhibit A attached to opposing affidavit of Michael Kearney, dated June 13, 1961), defendant A'Hearn, then District Director, informed plaintiffs that their 1953 return, received by the Service on June 15, 1954, disclosed a tax of $3,936.97 and payment of $62.06 (representing 6% interest on $4,136.97 to cover the 90-day extension). It was noted that plaintiffs' return had not yet been audited, but a preliminary examination thereof revealed a mathematical error resulting in a tax decrease of $200. No deficiency

notice was issued by the District Director.

On January 4, 1956, plaintiffs were notified that the Service had issued a warrant of distraint due to plaintiffs' nonpayment of their 1953 tax obligation, consisting of $3,972.71 in tax and $317.77 in interest for a total indebtedness of $4,290.48. (See Exhibit A attached to supplemental affidavit of Michael Kearney, dated June 19, 1961.)

A "Notice of Adjustment," dated October 11, 1957, informed plaintiffs that the Service had credited a net overassessment of $71.04 on their 1956 tax liability to their 1953 tax period indebtedness. (See Exhibit C attached to opposing affidavit of Michael Kearney, dated June 13, 1961.)

On February 27, 1959, plaintiffs filed an amended return showing no tax due and a refund due them of $404.91 (amount paid as withholding tax). In a letter dated August 19, 1959, plaintiffs were notified by the Internal Revenue Service that their amended return was being examined by the Audit Division and were asked to sign tax collection waivers. (See Exhibit A attached to Plaintiffs' Supplemental Memorandum.) According to plaintiffs, the District Director formally rejected their refund claim of $404.91 on May 11, 1960 and made a demand for payment of $3,901.67 in tax. (See Amended Complaint, para. 10.)

Plaintiffs received a "Final Notice Before Seizure" (see Exhibit C attached to Plaintiffs' Supplemental Memorandum), dated April 19, 1961, which referred to plaintiffs' indebtedness to the government for delinquent tax in the amount of $5,723.63 (tax balance: $3,901.67; interest: $1,821.96). Full payment within ten days was demanded in order for plaintiffs to avoid levy or seizure.

It is argued that the District Director should have issued a statutory notice of deficiency to plaintiffs upon receipt of their 1953 return before the assessment

1. It appears that plaintiffs' tax returns were destroyed by the Federal Records Center on March 14, 1961; defendants have therefore accepted as true, for the purpose of these motions, plaintiffs' allegations of fact regarding matter contained in papers or returns plaintiffs filed with the District Director. (See Affidavit of Morton L. Ginsberg, dated June 9, 1961, p. 2.)

of August 5, 1954 was made. Plaintiffs contend that such an assessment without a deficiency notice, as required by Section 272(a) [2] of the 1939 Code, was illegal and void. By failing to issue this notice, the District Director is charged with having precluded plaintiffs from an appeal to the Tax Court for a redetermination of their tax obligation prior to payment thereof.

In Denton v. United States, 3 Cir., 1956, 235 F.2d 733, 734–735, the appellate court stated:

"The term deficiency is explicitly defined in Section 271(a) of the Code and exists where the proper amount of tax imposed exceeds the amount shown as due by the taxpayer on his return plus any amounts previously assessed (or collected without assessment) as a deficiency minus the amount of any rebates." [3]

■ The amount assessed plaintiffs on August 5, 1954, namely, $3,936.97, was of course less than the tax balance of $4,136.97 shown as due on their completed return of June 14, 1954. It is evident, therefore, that since the District Director was not endeavoring at the time to assess or collect a deficiency, the notice provisions of Section 272(a) were inapplicable. Hastings & Co. v. Smith, 3 Cir., 1955, 224 F.2d 875, 879; Denton v. United States, D.C.D.N.J., 1955, 132 F.Supp. 741, 742, affirmed, 3 Cir., 1956, 235 F.2d 733. See also Standard Oil Co. v. McMahon, 2 Cir., 1957, 244 F.2d 11.

The cases cited in support of plaintiffs' contention that a deficiency notice should have been issued herein are essentially inapposite since they involved situations in which deficiencies actually did, or were conceded to, exist. See Repetti v. Jamison, D.C.N.D.Calif., S.D., 1955, 131 F. Supp. 626, affirmed, 9 Cir., 1956, 239 F.2d 901; Peerless Woolen Mills v. Rose, 5 Cir., 1928, 28 F.2d 661; Continental Accounting & Audit Co., 1925, 2 B.T.A. 761.

Plaintiffs contend, however, that the law is clear that where a taxpayer denies tax liability, despite the showing of a tax balance due on his return, "zero" is the starting point in determining a deficiency under Section 271 of the 1939 Code.

In John Moir, 1925, 3 B.T.A. 21, 22, in denying the Commissioner's motion to dismiss a taxpayer's appeal for lack of jurisdiction on the ground that the requisite tax deficiency had not been deter-

2. Internal Revenue Code of 1939, § 272, as amended (26 U.S.C.A., 1955 ed.):

"§ 272. Procedure in General

"[(a) (1) Petition to The Tax Court of the United States.] If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this chapter, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within ninety days after such notice is mailed * * * the taxpayer may file a petition with the Tax Court of the United States for a redetermination of the deficiency. No assessment of a deficiency in respect of the tax imposed by this chapter and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such ninety-day period, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 3653(a) the making of such assessment or the beginning of such proceeding or distraint during the time of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court * * *."

3. Internal Revenue Code of 1939, § 271, as amended (26 U.S.C.A., 1955 ed.):

"§ 271. Definition of Deficiency

"(a) In general. As used in this chapter in respect of a tax imposed by this chapter, 'deficiency' means the amount by which the tax imposed by this chapter exceeds the excess of—

"(1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—

"(2) the amount of rebates, as defined in subsection (b) (2), made."

mined, the Board of Tax Appeals (now the Tax Court) declared:

"* * * The Commissioner's position in this plea is that the taxpayers have been assessed on the basis of the tax shown upon the taxpayers' returns, and that a deficiency is only an amount of tax determined by him to be due in excess of that shown on the taxpayer's return. This is true in the ordinary case, but in cases in which the taxpayer shows an amount of tax upon his return but does not admit that that amount of tax is due and collectible, it is the amount which he admits to be due and not the amount which appears upon the face of his return which is deemed the starting point in the computation of a deficiency. Appeal of Continental Accounting & Audit Co., 2 B.T.A. 761."

See also Fred Taylor, 1937, 36 B.T.A. 427, 429; Edward J. Lehmann, 1930, 21 B.T.A. 664, 671; Powell Coal Co., 1928, 12 B.T.A. 492, 497; U.S. Fidelity & Guaranty Co., 1926, 5 B.T.A. 23, 26.

■ Plaintiffs point out that attached to their tax return of June 14, 1954 was the stamped copy of their tentative "no tax due" return which had been filed with the Internal Revenue Service on March 13, 1954 and then returned to plaintiffs. The argument here seems to be that the two returns, when read together as a whole, thus indicated to the District Director that plaintiffs did not admit that the amount of tax shown on their June 14th return was due and collectible. However, plaintiffs' action in attaching their tentative return of March 13th to the June 14th return cannot be regarded as bearing this significant import, and was certainly equivocal in view of the fact that, in so doing, plaintiffs were merely complying with instructions received from the District Director at the time the stamped March 13th return was returned to them. (See Affidavit of Michael Kearney, June 13, 1961, p. 1.)

The case at bar is thus readily distinguishable from Continental Accounting

& Audit Co., 1925, 2 B.T.A. 761, wherein the corporate taxpayer had annexed to its return a statement or protest denying tax liability. Under these circumstances, the Board of Tax Appeals found that "read as a whole the returns show no amount as the tax or show the tax to be zero." 2 B.T.A. at 763. (Italics omitted.) The taxpayer was accordingly held entitled to an appeal to the Board from what was regarded as the determination of a deficiency by the Commissioner ("the difference between what he believes to be the correct tax" and "the amount shown on the returns as the tax or zero"). 2 B.T.A., at 764. See also Penn Mutual Indemnity Co. v. Commissioner, 3 Cir., 1960, 277 F.2d 16.

Likewise, in Fred Taylor, 1937, 36 B.T.A. 427, where the Commissioner, in 1935, prepared and filed a 1917 income tax return for the taxpayer, since the latter had failed to do so, showing a tax due of $10,657.88 and a penalty of $5,328.94, the taxpayer was found to have protested the Commissioner's action "long prior to the filing of the return." (p. 429) The taxpayer's subsequent petition to the Board admitted that the tax due was only $250.90. The Board held that the Commissioner had determined a deficiency to the extent that the tax and penalty he had listed in the return exceeded $250.90 and claimed jurisdiction to redetermine the alleged deficiency.

Plaintiffs further argue that since the Commissioner made a mathematical correction on their June 14th return which decreased by $200 the tax assessment made on August 5, 1954, this decreased "mathematical error assessment" was made under Section 272(f) of the 1939 Code and was void since it reduced rather than increased the amount of tax due.

A reading of Section 272(f) suffices to point out plaintiffs' misinterpretation of this provision and its inapplicability here. Section 272(f) provides in relevant part:

"* * * If the taxpayer is notified that, on account of a mathematical error appearing upon the face of the return, an amount of tax in

excess of that shown upon the return is due, and that an assessment of the tax has been or will be made on the basis of what would have been the correct amount of tax but for the mathematical error, such notice shall not be considered (for the purposes of this subsection, or of subsection (a) of this section, prohibiting assessment and collection until notice of deficiency has been mailed, or of section 322(c), prohibiting credits or refunds after petition to the Tax Court) as a notice of a deficiency, and the taxpayer shall have no right to file a petition with the Tax Court based on such notice, nor shall such assessment or collection be prohibited by the provisions of subsection (a) of this section."

■ This section thus provides that notice of an *increased* tax assessment based on what would have been the correct tax amount due but for a mathematical (or arithmetical) error by the taxpayer does not constitute a notice of deficiency entitling the taxpayer to prepayment litigation of his tax liability in the Tax Court. In the case at bar, the mathematical error made by plaintiffs on their 1953 return redounded to their benefit and served to decrease their tax balance by some $200. That this decreased assessment resulted from a mathematical error in plaintiffs' computation would seem to be immaterial under the statute since, in any event, no deficiency resulted. There is hence no basis for the contention that such a decrease rendered the assessment of August 5, 1954 void or invalid or affected in any manner plaintiffs' alleged entitlement to a statutory notice of deficiency.

Nothing was appended to plaintiffs' original tax return which was tantamount to or served as a protest or denial of their liability regarding the tax balance shown as due on this return. The assessment of August 5, 1954, as then determined, was an amount less than that shown as due on the aforesaid return of June 14, 1954.

The effect and significance, if any, of the amended return filed by plaintiffs on February 27, 1959 must be considered next. Plaintiffs contend that this return, which indicated a tax due of zero and claimed a refund of $404.91 for overpayment of tax for 1953, was duly acted upon and accepted by the Internal Revenue Service. In paragraph 10 of their amended complaint,[4] plaintiffs allege that the refund claim of $404.91 was formally rejected by the District Director on May 11, 1960 and demand for payment of $3,901.67 in tax made upon plaintiffs.

Under these circumstances, it is argued, the District Director should have issued a deficiency notice upon the receipt and acceptance of plaintiffs' amended tax return since the demand for payment of $3,901.67 increased plaintiffs' tax from zero (as claimed by the plaintiffs on their amended return) to $3,901.67 (as determined by the District Director).

There appears to have been no statutory authority under the 1939 Internal Revenue Code for the filing of an amended return as a matter of right; acceptance or rejection of such a return has been deemed by the courts a matter of internal administration solely within the discretion of the Commissioner. Daniels Jewelers, Inc. v. United States, Ct.Cl., 1960, 279 F.2d 226, 229; Schall & Co. v. United States, D.C.S.D.N.Y., 1954, 129 F.Supp. 137, 141. See also Polt v. Commissioner, 2 Cir., 1956, 233 F.2d 893, 897; Bird v. United States, 1 Cir., 1957, 241 F.2d 516, 518, affirming D.C.D.Mass., 1956, 141 F.Supp. 569; E. L. Harris, 1927, 5 B.T.A. 1026, 1028; New York

4. While the present motions were under consideration by the court, plaintiffs filed an amended complaint in this action. By stipulation dated July 25, 1961, the parties herein have agreed that the pending motions shall be considered by the court as having been predicated upon said amended complaint. The stipulation further provides that the defendants do not admit the truth of certain new allegations added in paragraphs 8 and 10 of the amended complaint for the purposes of this motion or the action.

Trust Co., 1926, 3 B.T.A. 583, 587–588; Kunkel & Co., 1925, 3 B.T.A. 133, 137. Where the Commissioner has assessed a deficiency on the basis of an amended return, this action has been construed as an acceptance of such return. See, e. g., Daniels Jewelers, Inc. v. United States, supra; Levy v. United States, 3 Cir., 1921, 271 F. 942.

Negotiations between plaintiffs and the Service with respect to the former's refund claim are said to have commenced in 1955 and progressed through the years to 1959; during this time plaintiffs allegedly had conversations with Revenue Agents "describing the basis and background for plaintiffs' request to file an amended return claim for a refund so as to correct the incorrect computation of their 1953 tax on their original return based on the facts as they existed at the time said original return was filed * *." (Amended complaint, para. 8.) It is further alleged that the Revenue Agents agreed to accept an amended return in the form of a perfected refund claim reflecting a deduction not taken by plaintiffs on their original return; accordingly, an amended return was filed on February 27, 1959, showing a tax of zero as due and claiming overpayment of $404.91. (Amended complaint, para. 8.)

Defendants emphasize, however, that merely allowing the filing of an amended return is not to be construed as an acceptance of the return with respect to the tax shown thereon, if any. Plaintiffs' amended return, it is asserted, was accepted only in the sense that its filing was permitted. This return is said to have been ultimately rejected when plaintiffs' claim for refund was disallowed and demand for payment of $3,901.67 in tax was made.

There is no indication whatsoever that the Commissioner (or rather his agent, the District Director) ever accepted plaintiffs' amended return, or that the subsequent demand for payment of $3,-901.67 was based upon such return. This latter demand, moreover, which is evidenced by the "Final Notice Before Seizure" (Exhibit C attached to Plaintiffs' Supplemental Memorandum), reflects the deduction of $71.04, the net overassessment from plaintiffs' 1956 tax which was credited by the Service to their 1953 tax indebtedness of $3,972.71, the amount specified in the notice of the warrant of distraint dated January 4, 1956 (Exhibit A attached to supplemental affidavit of Michael Kearney, dated June 19, 1961).

█ The evidence before the court clearly indicates that but one assessment has been determined by the District Director, to wit, that of August 5, 1954, which determination was rendered on the basis of the original return filed on June 14, 1954 rather than on any amended return. See New York Trust Co. et al., 1936, 3 B.T.A. 583. Plaintiffs endeavor in effect to render null and void an assessment unquestionably valid when made by virtue of the filing of an amended return which was rejected by the District Director. At no time has the assessed tax liability asserted against plaintiffs been in excess of the amount shown as due on their original return. Plaintiffs have therefore failed to show that they are entitled to a statutory notice of deficiency; nor have they satisfied the burden that is theirs in seeking to restrain the collection of a tax. No special or compelling facts or circumstances have been presented which would justify or prompt this extraordinary judicial relief. See Miller v. Standard Nut Margarine Co., 1932, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422; Holdeen v. Raterree, D.C.N.D. N.Y., 1957, 155 F.Supp. 509, 510, affirmed per curiam, 2 Cir., 1958, 253 F.2d 428; Concentrate Mfg. Corp. v. Higgins, 2 Cir., 1937, 90 F.2d 439. See also Botta v. Scanlon, 2 Cir., 1961, 288 F.2d 504, 506–508; Communist Party v. Moysey, D.C. S.D.N.Y., 1956, 141 F.Supp. 332, 338. Plaintiffs' motions must accordingly be denied.

█ Since plaintiffs are not entitled to a statutory notice of deficiency as prescribed by Section 272(a) (1) of the 1939 Code, their action for injunctive and mandamus relief contravenes the proscriptive terms of Section 7421 of the 1954 Code, 26 U.S.C.A. § 7421, that "no

**18**

suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." [5] Consequently, these claims must be dismissed.

In their amended complaint, plaintiffs also seek a money judgment against the United States for alleged overpayments of $404.91 and $71.04 for the tax years 1953 and 1956 respectively.

Section 7422(a) of the 1954 Internal Revenue Code, 26 U.S.C.A. § 7422(a), provides that no suit or proceeding for the recovery of an internal revenue tax shall be maintained in any court until a claim for refund or credit has been filed with the Secretary of the Treasury or his delegate. There is no allegation in the amended complaint that plaintiffs have ever filed a claim for refund of the $71.04 mentioned above (which was credited by the Internal Revenue Service in 1957 to plaintiffs' 1953 tax indebtedness). Hence, plaintiffs have failed to comply with the requirements of Section 7422(a) regarding this claim.

The refund claim for the 1953 overpayment of $404.91 would appear at first blush to be time-barred by Section 6511 (a) [6] of the 1954 Code which requires a refund claim to be filed within three years from the time the return was required to be filed or two years from the time the tax was paid, whichever period expires later. Plaintiffs' completed return was formally filed on June 14, 1954, at which time a tax of $404.91 had already been paid under the withholding tax law provisions. The refund claim for this amount, as set forth in the amended return of February 27, 1959, was thus filed over one and a half years after the three-year statutory limitation had expired.

█ The fact that plaintiffs' claim was considered by the District Director on its merits, and ultimately rejected, would not serve to cure an untimely refund claim. The Commissioner (or his delegate, the District Director) has been said to be without power to waive substantive statutory requirements governing the time period within which refund claims must be presented. Scharpf v. United States, D.C.D.Or., 1956, 157 F. Supp. 434, 437–438, affirmed per curiam, 9 Cir., 1957, 250 F.2d 744; Melchior v. United States, Ct.Cl., 1956, 145 F.Supp. 193, 194, and cases cited therein. Cf. Sicanoff Vegetable Oil Corp. v. United States, Ct.Cl., 1960, 181 F.Supp. 265, 268.

However, plaintiffs allege in paragraph 8 of their amended complaint that a refund claim in the nature of a letter was informally filed with the Commissioner's Bronx office in 1955, well within the statutory period, and that conversations concerning the background and nature of this claim were also had with Revenue Agents from 1955 to 1959. While defendants have not admitted the truth of these allegations (see Stipulation of July 25, 1961), the court shall deem them as true for the purposes of determining the motion to dismiss.

In Rosengarten v. United States, Ct. Cl., 1960, 181 F.Supp. 275, 278–279, cert. denied, 1960, 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed.2d 53 Chief Judge Jones noted:

"An informal claim timely filed which fairly gives notice of a taxpayer's intention to press for a refund of taxes has been held to be sufficient to satisfy the statute, even if the formalizing of that claim is not accomplished until after the statute has run. This doctrine has been applied in this court and most of the other Federal courts. United States v. Kales, 1941, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132; Crenshaw v. Hrcka, 4 Cir., 1956, 237 F.2d 372; Cumberland Portland Cement Co. v.

---

5. Subject, of course, to the exceptions provided for in Section 6212(a) and (c), dealing with the issuance of deficiency notices, which are inapplicable to the case at bar. See also Section 3653(a) of the 1939 Code, 26 U.S.C.A.

6. This provision contains the same time period previously found in Section 322(b) (1) of the 1939 Code, 26 U.S.C.A. See Jones v. Liberty Glass Co., 1947, 332 U.S. 524, 68 S.Ct. 229, 92 L.Ed. 142.

United States, 1952, 104 F.Supp. 1010, 122 Ct.Cl. 580.

"Those and other cases acknowledge that a specific taxpayer may claim a refund for a specific year in a formal fashion even beyond the limitation period if the claim relates back to an informal claim filed by that taxpayer for that year within the limitation period."

■ Viewing the allegations in the amended complaint, therefore, in the light most favorable to plaintiffs, it would appear that an informal refund claim, satisfying the principles enunciated in Rosengarten, was filed by plaintiffs for the amount of $404.91 within the statutory period. Under the circumstances, and especially at this posture of the case, the court would be most reluctant to dismiss this particular claim on the basis of the pleading before it.

Defendants' motion to dismiss the instant action is accordingly granted to the extent indicated herein.

Settle orders on notice.

## I. MOTION OF DEFENDANTS FOR SUMMARY JUDGMENT

The present amended complaint is a claim for refund of $404.91 in income tax of plaintiffs for the year 1953.

Recovery of an alleged overpayment of $71.04 for the year 1956 is also sought. The defendants by their answer allege that allowance was made to plaintiffs for this sum of $71.04 and this apparently is not denied.

It appears that plaintiffs have not paid any portion of their 1953 tax except the withholding portion or the sum of $404.-91. (See amended complaint, par. 13)

■ The defendants contend that in cases in which the tax payer has not paid his entire assessment for the year in question, the district court has no jurisdiction to entertain a suit for refund. This position of the government appears to be correct. The United States Supreme Court has held that a federal district court does not have jurisdiction of an action by a tax payer for a refund of a *part* payment made by him on an assessment for an alleged deficiency in his income tax. The tax payer, it held, must pay the full amount of the assessment before he may challenge its validity in an action under Title 28 U.S.C. § 1346(a) (1). Flora v. United States, 1958, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165, affirmance upheld on rehearing, 1960, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623.

Since the court lacks jurisdiction, the motion to dismiss must be granted.

So ordered.

## II. PLAINTIFFS' MOTION FOR AN INJUNCTION PENDING APPEAL FROM THE PREVIOUS APPLICATION FOR INJUNCTION

No sound reason in fact or in law appears to warrant the granting of plaintiffs' application for restraint of defendants pending the appeal taken. My opinion filed September 7, 1961 in effect covers the issues so involved.

Motion denied.

So ordered.

## III. PLAINTIFFS' MOTION TO SERVE AND FILE A SECOND AMENDED COMPLAINT

The plaintiffs ask leave of the court to serve and file a second amended complaint which differs from the amended complaint in that it contains the following allegation:

"AS AND FOR THEIR COUNTERCLAIM AGAINST THE UNITED STATES, PLAINTIFFS ALLEGE:

"18. That the plaintiff, Michael Kearney, possessed property rights in and to 225,000 shares of Class 'B' stock of the American President Lines, Ltd. and valid attorney's liens on all the corporate stock involved in litigation known as Dollar v. Land; that said property and liens were taken by the United States to the damage of the plaintiff, Michael Kearney, in the sum of $9,354,469.-90; that demand was duly made in 1960 and refused; that the official

reports outlining said Dollar litigation are contained in Kearney v. United States, [Ct.Cl.] 285 F.2d 797."

The defendants oppose this motion.

The plaintiffs designate paragraph 18 as a "counterclaim" and state that it was not previously alleged because no judicial claim had yet been clearly made by defendants against plaintiffs, and since the subject matter of the "counterclaim" was pending before the United States Court of Claims on the date the present action was instituted.

Plaintiffs now claim that defendants seek by paragraph 9 of defendants' answer to the amended complaint to enter judgment for defendants. Now plaintiffs assert that their proposed counterclaim is for the purpose of offsetting the claim of defendants.

Plaintiffs base their right to assert this counterclaim on Rules 13(d), 15(a) and 18(a) of the Federal Rules of Civil Procedure.

■ At the present time there exists an unpaid tax due of plaintiffs for the year 1953 in the sum of $3,901.37 plus interest. The United States has not sued here or claimed any affirmative relief; the plaintiffs have sued the government, which is under no obligation to resort to a court to collect the tax. Congress has established a means whereby unpaid taxes may be collected solely through administrative means. See 26 U.S.C. §§ 6201, 6301.

The amended complaint, filed July 24, 1961, asks for an injunction to prevent defendant District Collector from attempting to collect an alleged tax deficiency for 1953 and for a judgment for plaintiffs for taxes paid in the amount of $475.95. The answer, filed November 17, 1961, merely demands that plaintiffs' complaint be dismissed.

■ Defendants have not sought affirmative relief here, but merely prayed for a "judgment against plaintiffs" or, in other words, that defendants are not liable to plaintiffs. The United States is not required to bring a counterclaim in a refund tax suit. Flora v. United States, 1960, 362 U.S. 145, 166, 80 S.Ct. 630, 4 L.Ed.2d 623. Consequently, no basis exists for plaintiffs' interposition of a "counterclaim" pursuant to Rule 13. United States v. Raefsky, D.C.E.D.Pa. 1956, 19 F.R.D. 355. It is self-evident that in order to have a counterclaim there must first be a claim against the party asserting the counterclaim.

■ Assuming that it were proper for plaintiffs to assert a counterclaim in this action, no authority to assert a counterclaim of this size exists under the Tucker Act. 28 U.S.C. § 1346(a) (2); United States v. Nipissing Mines Co., 2 Cir. 1913, 206 F. 431, 434, appeal dismissed, 1914, 234 U.S. 765, 34 S.Ct. 673, 58 L.Ed. 1582; United States v. Wissahickon Tool Works, D.C.S.D.N.Y.1949, 84 F.Supp. 896, aff'd 2 Cir. 1952, 200 F.2d 936; United States v. Double Bend Mfg. Co., D.C.S.D.N.Y.1953, 114 F.Supp. 750.

Federal Rule 13(d) expressly states that the Federal Rules do not enlarge limitations on the government's consent to be sued.

■ Assuming plaintiffs asserted the "counterclaim" as an original action, no jurisdiction over such a claim would exist since Congress has not waived the government's immunity from suit and such statutory consents must be narrowly construed. Wallace v. United States, 2 Cir. 1944, 142 F.2d 240, cert. denied 1944, 323 U.S. 712, 65 S.Ct. 37, 89 L.Ed. 573.

■ No action would lie under the Tucker Act (28 U.S.C. § 1346(a) (2)) since the "counterclaim" asserts a "taking" by the government, and it is well settled that only contracts implied in fact, *not in law*, are properly based under this statute. First National Bank of Emlenton, Pa. v. United States, 3 Cir. 1959, 265 F.2d 297; Alliance Assurance Co. v. United States, 2 Cir. 1958, 252 F.2d 529.

■ The Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), does not supply a jurisdictional basis since the facts of this claim are within the exception contained in 28 U.S.C. 2680(a) because they

fall within the definition of a "discretionary function." See Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427; Chournos v. United States, 10 Cir. 1951, 193 F.2d 321, cert. denied, 1952, 343 U.S. 977, 72 S.Ct. 1074, 96 L.Ed. 1369.

■ If plaintiffs contemplate a setoff, the counterclaim is not in order since it does not arise out of the same transaction, as required. See United States v. Wessel Duval & Co., D.C.S.D.N.Y. 1953, 115 F.Supp. 678.

■ In any event, the counterclaim is barred by the doctrine of res judicata. Plaintiffs refer to Kearney v. United States, Ct.Cl.1961, 285 F.2d 797. In fact, certiorari was denied, 1961, 366 U.S. 935, 81 S.Ct. 1660, 6 L.Ed.2d 847. The Court of Claims expressly determined that the lien asserted was a nullity under the provisions of the Anti-Assignment Act, as amended, 31 U.S.C. § 203.

The motion to amend is denied.

So ordered.