## FLORA *v.* UNITED STATES.

No. 492.   Argued May 20, 1958.—Decided June 16, 1958.

*Randolph W. Thrower* argued the cause for petitioner. With him on the brief was *A. G. McClintock. W. A. Sutherland* and *Mac Asbill, Jr.* entered an appearance for petitioner.

*John N. Stull* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Rice* and *Harry Baum.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The issue in this case is whether a taxpayer must pay the full amount of an income tax deficiency before he may challenge its correctness by a suit for refund under 28 U. S. C. § 1346 (a)(1).

During 1950 petitioner suffered losses on the sale of certain commodities and futures. He reported them as ordinary losses, but the Commissioner of Internal Revenue characterized them as capital losses. A deficiency assessment was levied in the amount of $28,908.60, including interest. Petitioner made two payments that totaled $5,058.54, and then submitted a claim for refund of that amount. The claim was disallowed. On Aug. 3, 1956, petitioner brought this action under 28 U. S. C. § 1346 (a)(1) for refund. The United States moved to

dismiss for want of jurisdiction and for failure to state a claim upon which relief could be granted. The district judge held that because petitioner had not paid the full amount of the deficiency he "should not maintain" the action. Because the question had not been resolved by the Court of Appeals, however, he deemed it advisable to pass upon the merits, and upon doing so entered judgment for defendant United States. 142 F. Supp. 602. The Court of Appeals for the Tenth Circuit vacated the judgment and remanded with instructions to dismiss, holding that the complaint "failed to state a claim" because petitioner had not paid the entire assessment for the period in question. 246 F. 2d 929.[1] We granted certiorari, 355 U. S. 881, to resolve the conflict between that decision and *Bushmiaer* v. *United States,* 230 F. 2d 146 (C. A. 8th Cir.).[2]

The pertinent jurisdictional statute, 28 U. S. C. § 1346 (a)(1), reads as follows:

> "(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:
>
> "(1) Any civil action against the United States for the recovery of any internal-revenue *tax* alleged to have been erroneously or illegally assessed or collected, or any *penalty* claimed to have been collected without authority or any *sum* alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws . . . ." (Emphasis supplied.)

---

[1] See also *Suhr* v. *United States,* 18 F. 2d 81 (C. A. 3d Cir.). But cf. *Sirian Lamp Co.* v. *Manning,* 123 F. 2d 776 (C. A. 3d Cir.).

[2] See also *Sirian Lamp Co.* v. *Manning,* 123 F. 2d 776 (C. A. 3d Cir.) ; *Coates* v. *United States,* 111 F. 2d 609 (C. A. 2d Cir.). But cf. *Bendheim* v. *Commissioner,* 214 F. 2d 26, 28 (C. A. 2d Cir.) ; *Elbert* v. *Johnson,* 164 F. 2d 421, 423–424 (C. A. 2d Cir.).

In matters of statutory construction the duty of this Court is to give effect to the intent of Congress, and in doing so our first reference is of course to the literal meaning of words employed. The principle of strict construction of waivers of sovereign immunity, *United States* v. *Michel,* 282 U. S. 656, and the sharp division of opinion among the lower courts on the meaning of the pertinent statutory language suggest the presence of ambiguity in what might otherwise be termed a clear authorization to sue for the refund of "any sum." Consequently, a thorough consideration of the relevant legislative history is required.

Section 1346 was originally enacted as Section 1310 (c) of the Revenue Act of 1921.[3] Its essential language seems to have been copied from R. S. § 3226, the predecessor of the present claim-for-refund statute, 26 U. S. C. (Supp. V) § 7422 (a). Those statutes use language identical to that appearing above to provide that no suit for the refund of a "tax," "penalty," or "sum" shall be maintained until similar relief has been sought from the Secretary or his delegate.[4] The meaning that has been ascribed to this language in the claim-for-refund statute provides the key to what Congress intended when it used that language in the jurisdictional provision.

---

[3] 42 Stat. 311.

[4] 26 U. S. C. (Supp. V) § 7422 (a): "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof." R. S. § 3226 is quoted in note 7, *infra.*

The original claim-for-refund statute, Section 19 of the Revenue Act of July 13, 1866, provided that no suit should be maintained in any court for the recovery of "any tax alleged to have been erroneously or illegally assessed or collected, until appeal shall have been duly made to the commissioner of internal revenue . . . ."[5] On this "appeal" the Commissioner was empowered to "remit, refund, and pay back" all taxes or penalties improperly assessed or collected.[6] When the appeal requirement was restated in Section 3226 of the Revised Statutes,[7] Congress added the "penalty" and "sum" clauses, bringing together for the first time the three-way division that survives in 26 U. S. C. (Supp. V) § 7422 (a) and 28 U. S. C. § 1346 (a)(1). The revisers left no indication of what significance, if any, was to be attached to this addition.

During the period of this formative legislation refund suits could not be brought against the United States because of its sovereign immunity. Tax litigation took the form of an action of assumpsit against the collector.

[5] 14 Stat. 152.

[6] 14 Stat. 111.

[7] "No suit shall be maintained in any court for the recovery of [1] any internal tax alleged to have been erroneously or illegally assessed or collected, or of [2] any penalty claimed to have been collected without authority, or of [3] any sum alleged to have been excessive or in any manner wrongfully collected, until appeal shall have been duly made to the Commissioner of Internal Revenue . . . ." R. S. § 3226.

This language is practically identical to that used by the 1866 Act in giving the Commissioner his refunding powers. 14 Stat. 111, restated in R. S. § 3220. The first category dates back to the 1863 Act. 12 Stat. 729. The third category was added in 1864. 13 Stat. 239. The 1866 Act rounded out the three categories by adding the second. 14 Stat. 111. An examination of the legislative history discloses no indication of the purpose of these successive additions.

See *Philadelphia* v. *Collector*, 5 Wall. 720.[8] Such suits were of course subject to the provision in Section 19 of the 1866 Act that they must be preceded by "appeal" to the Commissioner. The meaning of that command, which later became R. S. § 3226 and eventually, as amended, 26 U. S. C. (Supp. V) § 7422 (a), was considered in *Cheatham* v. *United States*, 92 U. S. 85. There, in response to an appeal, the Commissioner of Internal Revenue had set aside the first assessment of taxpayer's 1864 income taxes and directed the local assessor to make a second one. The taxpayer paid the second assessment and sued the collector for refund. The Court held that by failing to appeal from the second assessment the taxpayer failed to comply with Section 19 and hence had no right of action. In the course of its opinion the Court made this careful statement of the remedies then available to taxpayers who sought to contest the correctness of their tax:

> "So also, in the internal-revenue department, the statute which we have copied allows appeals from the assessor to the commissioner of internal revenue; and, if dissatisfied with his decision, *on paying the tax* the party can sue the collector; and, if the money was wrongfully exacted, the courts will give him relief by a judgment, which the United States pledges herself to pay.
>
> .        .        .        .        .

---

[8] Initially such suits depended upon diversity jurisdiction. *Collector* v. *Hubbard*, 12 Wall. 1. Later Congress created jurisdiction for "all causes arising under any law providing internal revenue . . . ." R. S. § 629 Fourth. With slight modification that provision became Section 24 Fifth of the Judicial Code, 36 Stat. 1092, and is presently 28 U. S. C. § 1340. See *Lowe Bros. Co.* v. *United States*, 304 U. S. 302, 305.

". . . While a free course of remonstrance and appeal is allowed within the departments before the money is finally exacted, the general government has wisely made *the payment of the tax claimed,* whether of customs or of internal revenue, a condition precedent to a resort to the courts by the party against whom the tax is assessed. . . . If the compliance with this condition [that suit must be brought within six months of the Commissioner's decision] requires the party aggrieved to pay the money, he must do it. He cannot, after the decision is rendered against him, protract the time within which he can contest that decision in the courts by his own delay in paying the money. It is essential to the honor and orderly conduct of the government that its taxes should be promptly paid, and drawbacks speedily adjusted; and the rule prescribed in this class of cases is neither arbitrary nor unreasonable. . . .

"The objecting party can take his appeal. He can, if the decision is delayed beyond twelve months, rest his case on that decision; or he can *pay the amount claimed,* and commence his suit at any time within that period. So, after the decision, he can pay at once, and commence suit within the six months . . . ." [9] (Emphasis added.)

From this carefully considered dictum it is unmistakably clear that the Court understood the statutes of that time to require full payment of an assessed tax as a condition precedent to the right to sue the collector for a refund. This understanding of the statutory scheme appears to have prevailed for the succeeding fifty or sixty years. It was never suggested that the addition in R. S. § 3226 of the clause beginning "any sum" effected any change. The *Cheatham* case was decided after that

---

[9] 92 U. S., at 88–89.

addition was made, and it gave no indication that the "condition precedent" of which it spoke had already been abrogated by Congress. Consistent with that understanding, there does not appear to be a single case before 1940 in which a taxpayer attempted a suit for refund of income taxes without paying the full amount the Government alleged to be due. Court opinions that took occasion to comment on the extent of payment are consistent with the *Cheatham* declaration,[10] and that case has continued to be cited with approval to the present day.[11] Such was the understanding of the necessity for full payment in the suit against the collector.

Since the statute now under consideration, 28 U. S. C. § 1346 (a)(1), employs language identical to that in the statute under which the full-payment understanding developed, R. S. § 3226, a construction requiring full payment would appear to be more consistent with the established meaning of the statutory language. Furthermore, the situation with respect to tax suits against the United States at the time 28 U. S. C. § 1346 (a)(1) was enacted, the express purpose of its enactment, and subse-

---

[10] *Kings County Savings Institution* v. *Blair,* 116 U. S. 200, 205 (1886) ("No claim for the refunding of taxes can be made according to law and the regulations until after the taxes have been paid [and] . . . no suit can be maintained for taxes illegally collected unless a claim therefor has been made within the time prescribed by the law."); *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429, 609 (1895) (dissenting opinion) ("The same authorities [including the *Cheatham* case] have established the rule that the proper course, in a case of illegal taxation, is to pay the tax under protest or with notice of suit, and then bring an action against the officer who collected it."); *Dodge* v. *Osborn,* 240 U. S. 118, 120 (1916) ("The remedy of a suit to recover back the tax after it is paid is provided by statute . . . ."); see note 20, *infra.*

[11] *E. g., Phillips* v. *Commissioner,* 283 U. S. 589, 595; *United States* v. *Jefferson Electric Co.,* 291 U. S. 386, 395–396; *Dobson* v. *Commissioner,* 320 U. S. 489, 496.

quent expressions of congressional intent all suggest that the principle of full payment was to be preserved.

The jurisdictional provision that is now 28 U. S. C. § 1346 (a)(1) was first enacted in Section 1310 (c) of the Revenue Act of 1921.[12] At that time the United States was already suable in the District Courts. Since 1887 the Tucker Act had allowed suit against the United States for claims less than $10,000 "founded upon . . . any law of Congress . . . ,"[13] and that language included suits to obtain refund of income taxes. *United States* v. *Emery, Bird, Thayer Realty Co.,* 237 U. S. 28. Since R. S. § 3226 was cast in the broadest of terms, its requirement that refund suits be preceded by an "appeal" to the Commissioner clearly applied to the Tucker Act cases, *United States* v. *Michel,* 282 U. S. 656, and the related requirement that full payment must be made prior to suit seems to have been assumed to be equally applicable. For amounts in excess of the $10,000 Tucker Act limitation the taxpayer could invoke his old remedy against the collector.

The complementary nature of the two District Court remedies was impaired when this Court re-emphasized the rule requiring the collector to be sued personally. A suit against the office or the successor in office of a deceased collector could not be maintained. *Smietanka* v. *Indiana Steel Co.,* 257 U. S. 1 (1921). Senator Jones of New Mexico interrupted floor debate on the Revenue Act of 1921 to call attention to this decision. In his view it meant that when the particular collector was dead a taxpayer suing for more than $10,000 had to bring suit in the Court of Claims. In addition to the extra expense and inconvenience of litigating in Washington, a Court of Claims

---

[12] 42 Stat. 311.

[13] 24 Stat. 505, 28 U. S. C. § 1346 (a)(2).

judgment carried no interest. The Senator proposed an amendment, stating:

"What is here proposed is that we shall remedy that situation by providing that where the collector to whom the revenue was paid has died then the claimant may sue the United States. It simply brings about an equitable situation and prevents the taxpayer from having to suffer the hardships which would be brought upon him simply through the accident of the death of the collector to whom he paid the money. I offer the amendment for the purpose of remedying that situation." [14]

The amendment, which was accepted without further comment, conferred jurisdiction on the District Court,

"Concurrent with the Court of Claims, of any suit or proceeding, commenced after the passage of the revenue act of 1921, for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws, even if the claim exceeds $10,000, if the collector of internal revenue by whom such tax, penalty, or such was collected is dead at the time such suit or proceeding is commenced." [15]

The amendment's narrow-stated purpose refutes any suggestion that Congress intended further to expand or even

---

[14] 61 Cong. Rec. 7506–7507.

[15] 61 Cong. Rec. 7507. A second amendment provided that interest should be allowed in any judgment against the United States in these refund suits. *Ibid.* A special amendment in 1925 added the right to bring such refund suits when the collector "is not in office." 43 Stat. 972.

to restate the jurisdiction of the District Court in refund suits brought against the United States. As we have seen, the District Courts already had such jurisdiction under the Tucker Act, and there is no indication that Congress intended any change in the terms on which that action was made available other than the change that was clearly set forth. The statute that is now 28 U. S. C. § 1346 (a) (1) was enacted merely to remove the jurisdictional amount limitation of the Tucker Act in the special situation where the collector could not be sued. See *Lowe Bros. Co.* v. *United States,* 304 U. S. 302, 305. The House Conference Report and a contemporary Treasury Department declaration confirm this view of the statute's effect.[16]

The similarity of essential language leaves no doubt that the terms of the jurisdictional provision were copied from the claim-for-refund statute, R. S. § 3226, as amended by Section 1318 of the Revenue Act of 1921.[17] The fact that this language had for many years been considered to require full payment before suing the collector, and the fact that the avowed purpose of the 1921 amendment was merely to cure an inadequacy in the suit against the collector, combine as persuasive indications that no change was intended in the full-payment principle declared in *Cheatham* v. *United States, supra.*

When Congress created the Board of Tax Appeals in 1924,[18] it demonstrated a clear understanding that refund suits could only be maintained upon full payment of the

---

[16] H. R. Rep. No. 486, 67th Cong., 1st Sess. 57; II–1 Cum. Bull. 224, 225.

[17] 42 Stat. 314. The 1921 Act substituted "claim for refund or credit" where the statute formerly referred to an "appeal" to the Commissioner.

[18] 43 Stat. 336.

tax alleged to be due. The House Committee proposing the bill explained its purpose as follows:

"The committee recommends the establishment of a Board of Tax Appeals to which a taxpayer may appeal prior to the payment of an additional assessment of income, excess-profits, war-profits, or estate taxes. Although a taxpayer may, after payment of his tax, bring suit for the recovery thereof and thus secure a judicial determination of the questions involved, he can not, in view of section 3224 of the Revised Statutes, which prohibits suits to enjoin the collection of taxes, secure such a determination prior to the payment of the tax. The right of appeal after payment of the tax is an incomplete remedy, and does little to remove the hardship occasioned by an incorrect assessment. The payment of a large additional tax on income received several years previous and which may have, since its receipt, been either wiped out by subsequent losses, invested in non-liquid assets, or spent, sometimes forces taxpayers into bankruptcy, and often causes great financial hardship and sacrifice. These results are not remedied by permitting the taxpayer to sue for the recovery of the tax after this payment. He is entitled to an appeal and to a determination of his liability for the tax prior to its payment." [19]

Petitioner argues that the "hardship" the Board of Tax Appeals was created to alleviate was not the taxpayer's inability to sue without paying the whole tax—for petitioner erroneously concludes that the 1921 amendment conferred that right—but the Government's power to

---

[19] H. R. Rep. No. 179, 68th Cong., 1st Sess. 7. The Senate Committee on Finance made a similar explanation. S. Rep. No. 398, 68th Cong., 1st Sess. 8.

collect the balance due while a refund suit was in progress. But the Committee Report quoted above clearly demonstrates that the hardship about which the Congress was concerned was the hardship of pre-litigation payment, not post-litigation collection. *Old Colony Trust Co.* v. *Commissioner of Internal Revenue,* 279 U. S. 716, 721.[20]

The final step in the evolvement of 28 U. S. C. § 1346 (a)(1) took place in the Act of July 30, 1954,[21] which removed the $10,000 jurisdictional limitation and eliminated the condition about the collector being dead or out of office. Far from indicating an intent to allow suit without full payment of the tax due, the legislative history of that amendment shows a clear understanding of the *Cheatham* requirement, and demonstrates a narrow purpose in no way inconsistent with that requirement. The House Report states:

> "The purpose of this bill is to permit taxpayers a greater opportunity to sue the United States in the district court of their own residence to recover taxes which they feel have been wrongfully collected. This is done by removing the jurisdictional limitation of $10,000 now imposed on such suits." [22]

In explaining the present state of the law the Report goes on to point out that a taxpayer may contest a deficiency assessment by a petition in the Tax Court. "The tax-

---

[20] "The Board of Tax Appeals . . . was created by Congress to provide taxpayers an opportunity to secure an independent review of the Commissioner of Internal Revenue's determination of additional income and estate taxes by the Board in advance of their paying the tax found by the Commissioner to be due. Before the Act of 1924 the taxpayer could only contest the Commissioner's determination of the amount of the tax after its payment."

[21] 68 Stat. 589.

[22] H. R. Rep. No. 659, 83d Cong., 1st Sess. 1.

payer may, however," the Report continues, "elect to pay his tax and thereafter bring suit to recover the amount claimed to have been illegally exacted." [23]

The foregoing study of the legislative history of 28 U. S. C. § 1346 (a)(1) and related statutes leaves no room for contention that their broad terms were intended to alter in any way the *Cheatham* principle of "pay first and litigate later." [24] For many years that principle has been reinforced by the rule that no suit can be maintained for the purpose of restraining the assessment or collection of any tax. [25] More recently, Congress took care to except from the operation of the Federal Declaratory Judgments Act any controversies "with respect to Federal taxes." [26] To ameliorate the hardship produced by these requirements Congress created a special court where tax questions could be adjudicated in advance of any payment. But there is no indication of any intent to create the hybrid remedy for which petitioner contends.

It is suggested that a part-payment remedy is necessary for the benefit of a taxpayer too poor to pay the full amount of the tax. Such an individual is free to litigate in the Tax Court without any advance payment. Where the time to petition that court has expired, or where for some other reason a suit in the District Court seems more desirable, the requirement of full payment may in some instances work a hardship. But since any hardship would grow out of an opinion whose effect Congress in succes-

[23] *Id.*, at 2. And see S. Rep. No. 115, 83d Cong., 1st Sess.

[24] *Allen* v. *Regents of University System of Ga.*, 304 U. S. 439, 456 (concurring opinion).

[25] 14 Stat. 475 (1867), re-enacted in R. S. § 3224, presently in force as 26 U. S. C. (Supp. V) § 7421.

[26] 49 Stat. 1027, 28 U. S. C. § 2201. See S. Rep. No. 1240, 74th Cong., 1st Sess. 11.

sive statutory revisions has made no attempt to alter, if any amelioration is required it is now a matter for Congress, not this Court.

The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE WHITTAKER, believing that *Bushmiaer* v. *United States,* 230 F. 2d 146 (C. A. 8th Cir.) ; *Sirian Lamp Co.* v. *Manning,* 123 F. 2d 776 (C. A. 3d Cir.), and *Coates* v. *United States,* 111 F. 2d 609 (C. A. 2d Cir.), properly apply the statutes involved and should be followed, would reverse the judgment below.