JOSEFINA CAPÓ SÁNCHEZ DE LUBE, Plaintiff and Appellant, *v.* JOSÉ R. NOGUERA, SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 428.        Decided November 30, 1965.

*Manuel I. Vallecillo* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On Second Motion for Reconsideration

Appellant contends that civil case No. 10 does not constitute res judicata or collateral estoppel by judgment.

In that action, brought by the Commonwealth of Puerto Rico against the Succession of Carmen Massari Cintrón of which estate plaintiff-appellant herein was part, for collection of an income-tax deficiency amounting to $21,569.50, defendants challenged the validity of the tax sought to be collected on several grounds of nullity, one of them being, and which concerns us, that the tax deficiency was levied on nonexistent profits, arbitrarily determined by taking into consideration a minimum basic value far below the market value of the property on March 1, 1963, the date which by law should prevail; that the basic value of the part of the real property sold, from which the alleged profit is derived, was $70,000 on March 1, 1913, and the sale was carried out for $61,500, with a resulting loss of $8,500; that the basic value of $36,661.96 assigned to the property by the Treasurer of Puerto Rico was erroneous.

In rejecting this cause of nullity in civil action No. 10, it was held that the error was one of computation, and that it could not be reviewed within the action for collection of taxes, because the taxpayers did not timely seek judicial review of the error within the term and through the procedure provided by law. It was also held that no evidence was offered to prove that the Treasurer's determination of the net income with respect to the sale of the real property was incorrect.

■ The doctrine of collateral estoppel by judgment is applied when a material fact for the issuance of a judgment is actually litigated and determined by a valid and final judgment, such a determination being conclusive in a subsequent suit between the same parties, although different causes of action are involved. *Pereira* v. *Hernández*, 83 P.R.R. 156 (1961), footnote 7 at p. 161, and cases therein cited.

It is evident that in civil case No. 10 the court, in rendering judgment, did not adjudicate on the merits defendants' contention concerning the basic value of the prop-

erty in 1913. That question was not litigated either, since the parties offered no evidence on that fact. Consequently, the doctrine of collateral estoppel by judgment, as repeatedly explained by this Court, does not legally preclude defendants therein from litigating that question in the suit for tax refund. *Tartak* v. *District Court*, 74 P.R.R. 805 (1953); *People* v. *Ibarra*, 69 P.R.R. 523 (1949).

■ However, under the doctrine of res judicata the judgment rendered in the former action bars a subsequent action between the same parties for the same cause of action and things, not only respecting the questions litigated and adjudicated, but also as to questions which could have been properly litigated and adjudicated in the former action. *Manrique* v. *Goffinet*, 37 P.R.R. 314 (1927).

In the judgment rendered in civil case No. 10 it was held that defendants therein could not question, within that action, the validity of the deficiency notified by the Treasurer because the taxpayers failed to avail themselves of the procedures established by law to review judicially the Treasurer's determinations on matter of notice of income-tax deficiencies. Subsequent decisions of this Court indicate that the trial judge was not mistaken in that case. See, for example, *Cervecería India* v. *Sec. of the Treasury*, 80 P.R.R. 262 (1958). This being so, the former judgment could not be invoked either as an exception of res judicata in the present suit.

■ We therefore agree with appellant that the trial court erred in holding that the judgment rendered in civil action No. 10 constitutes res judicata. However, the Superior Court also held that plaintiff was not entitled to the refund claimed since she had failed to pay the full amount of the tax due, having made only one payment of $20 on August 16, 1955, for credit against the tax due. We know that that tax, without including interest, amounts to $21,394.85. The par-

ties stipulated before the trial court that plaintiff Josefina Capó Sánchez de Lube would have to pay 66.405 percent of that tax. They also stipulated that plaintiff had paid to the Secretary of the Treasury the following amounts:

$5,786.94 deposited with the clerk of the Superior Court and remitted to the Secretary of the Treasury;

$2,400 withheld from her salary as professor of the University of Puerto Rico and also remitted to the Secretary of the Treasury;

$20 paid directly by the taxpayer to the Income Tax Bureau; and

$2,700 deposited with the clerk of the Superior Court, although not as yet delivered to the Secretary of the Treasury.

■ The taxes paid by plaintiff amount to $10,906.94. A simple arithmetical operation shows that 66.405 percent of the sum of $21,394.85 is $14,207.25, the amount which appellant is bound to pay.[1] Since she failed to pay the full amount, the trial court correctly applied the law and the case of *Flora* v. *United States*, 357 U.S. 63, 2 L.Ed.2d 1165.

In *Anglade* v. *Sec. of the Treasury*, 79 P.R.R. 785 (1957), decided by this Court before the decision in *Flora* was handed down, we said at p. 788:

"Be that as it may, it is well to clarify that where the Secretary of the Treasury and the taxpayer have reached an agreement as to the payment of the tax in specified instalments, or such situation arises from the manner in which the distraint proceeding has been effected, the taxpayer is not bound to pay the full amount of the instalments before applying for refund of that portion which he believes he has paid in excess of the amount due, or which has been collected from him, illegally or unduly, by the Secretary of the Treasury. 10 Merten's 366–67, § 58.34 (Callaghan and Company, 1948); *Sirian Lamp Co.* v.

---

[1] For the sake of argument, we have taken as basis the original deficiency without including interest. We are not determining here the amount which the taxpayer will definitively be bound to pay to the Secretary of the Treasury.

*Manning,* 123 F.2d 776, 778 (Maris) (1941); see *Coates* v. *United States,* 111 F.2d 609, 610 (Patterson) (1940)."

Subsequently we ratified this doctrine in *Inter-American Orange Crush* v. *Sec. of the Treasury,* 81 P.R.R. 302 (1959).

However, *Flora* holds, construing a legal provision similar to ours, that the taxpayer must pay the full amount of an income-tax deficiency before he may challenge its correctness in a claim for refund. The doctrine announced in *Coates* v. *United States, supra,* and *Sirian Lamp Co.* v. *Manning, supra,* which we cited as authorities in *Anglade,* was repudiated in *Flora.* See 10 Mertens, Law of Federal Income Taxation, 1963 Cum. Supp. 205, § 58.37. *Anglade* and *Inter-American Orange Crush,* insofar as they conflict with *Flora,* are overruled.

We believe that in following the *Flora* doctrine, we are placing a correct interpretation on our Income Tax Act. According to that doctrine, and contrary to the holding in *Anglade* and *Inter-American Orange Crush,* the taxpayer may not litigate in a claim for refund of the tax assessed if he has not already paid the same in full. The requisite of payment of the tax or its bonding before it may be litigated, is a general principle underlying our tax system on the question of collection and litigation of taxes imposed. In *Cervecería India* v. *Sec. of the Treasury,* 80 P.R.R. 262, we examined this principle and analyzed the procedures established by our laws for litigating taxes. Regarding income taxes, we said at p. 268: "In all cases in which the taxpayer is permitted to litigate a tax without paying first, the Legislature of Puerto Rico has imposed certain conditions to guarantee the payment of the tax and to insure the efficient collection of taxes. The Government has always tried to prevent tax suits from becoming an obstacle to the collection of revenues which are necessary for its proper functioning. Regarding income taxes, the giving of a bond is required normally as a condition precedent for appealing to the Superior Court

from a final determination of a deficiency. And if an appeal is taken from a judgment of the Superior Court determining an income-tax deficiency, the payment of the full amount of the deficiency is normally required as a condition precedent for the Supreme Court to hear the appeal on the merits."

If it were permitted in a claim for refund to litigate income taxes assessed and not fully paid, the procedures expressly provided in the Income Tax Act to question the legality of the tax assessed could be evaded. For instance, the Secretary of the Treasury notifies a taxpayer of a deficiency of $10,000 for a certain tax year and the taxpayer believes that the deficiency is erroneous as being excessive and that it should only amount to $2,000, he must pay $2,001 and then apply for refund of $1 which in his opinion he overpaid. Clearly, in this suit the taxpayer would be questioning not only the overpayment of $1 but also, indirectly, the remaining $7,999 of the total deficiency notified to him, without having paid or guaranteed such sum by bond.[2] Obviously this procedure is contrary to the provisions of the tax laws of Puerto Rico.

The new Income Tax Act of 1954, as amended (13 L.P.R.A. § 3272), has not changed this principle.[3] Regarding the overpayments made and the right to refund, the Act provides that "If the amount already paid, whether or not on the basis of installments, exceeds the amount determined

---

[2] Although the Secretary of the Treasury could proceed to collect this remaining sum, in the meantime the taxpayer would nonetheless be litigating its validity.

[3] Act No. 8 of April 10, 1964 (13 L.P.R.A. § 331, 1964 Cum. Supp.), establishing the system of partial payment of property and income taxes, does not alter in any way that principle either.

The partial-payment system does not apply to taxes in litigation. Even in cases where the Secretary of the Treasury accepts partial payments, the debts included in the partial-payment plans are registered in the Registry of Property on any property of the debtor, and they remain in effect as a lien on the property until the debtor shall have paid the debt in full. (13 L.P.R.A. § 335, 1964 Cum. Supp.)

to be the correct amount of the tax, the overpayment shall be credited or refunded as provided in section 3322 of this title." The refund therefore lies whenever the taxpayer, once the correct amount of the tax is determined by the Secretary of the Treasury or by the Court, makes a payment in excess of such amount. The determinations of the Secretary of the Treasury are presumed to be correct. Once the amount of the tax is determined by that officer, the taxpayer is bound to pay the same or may litigate its correctness through the procedures provided by law. He may apply for refund of that portion of the tax which in his opinion he overpaid only if he has paid the full amount of the tax determined by the Secretary of the Treasury and has not appealed to the Superior Court from the determination.

The second motion for reconsideration will be denied insofar as it seeks reversal of the judgment rendered by the Superior Court.

Mr. Chief Justice Negrón Fernández, together with Mr. Justice Belaval, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra concur in a separate vote rendered by the latter, concurring in the result on different grounds from those set forth by the Court. Mr. Justice Belaval also delivered a separate vote.

—O—

MR. JUSTICE SANTANA BECERRA, with whom MR. CHIEF JUSTICE NEGRÓN FERNÁNDEZ, MR. JUSTICE BELAVAL, and MR. JUSTICE HERNÁNDEZ MATOS concur, concurring in the result.

San Juan, Puerto Rico, November 30, 1965

I concur in that the judgment dismissing the complaint should be affirmed, but for legal reasons other than those stated by the Court.

On January 12, 1950, the then Treasurer of Puerto Rico notified to the Succession of Carmen Massari Cintrón, of which appellant Josefina Capó Sánchez de Lube formed part as legatee and heir, a deficiency of $21,394.85 in decedent's income tax for 1946. The deficiency was based on the gain from the sale of a capital asset which the Treasurer allotted to Carmen Massari Cintrón.

The final notice having been given, the Succession did not contest the tax before the Tax Court pursuant to § 57(a) of the Income Tax Act of 1924, as amended.

According to § 57(b), the Treasurer proceeded on April 14, 1950, to assess and levy the tax in the amount of $21,569.50, with interest thereon.

The tax having already been assessed and levied, the Succession could have paid the same and apply for refund, pursuant to the provisions of § 2(6) of Act No. 235 of May 10, 1949 (Sess. Laws, p. 732) and of § 2 of Act No. 328 of May 13, 1949 (Sess. Laws, p. 996). The Succession did not do so either.

It is unquestionable that either under the procedure of § 57(a) of the Income Tax Act or under the procedure of refund, the Succession and the petitioner herein could have challenged the deficiency tax determined by the Treasurer, with all the findings of fact and conclusions of law, including an attack on the basis used by that officer to determine the existence of a capital gain.

At this point, without the tax being contested or paid, on June 16, 1953, the Commonwealth of Puerto Rico, represented by the Governor, filed an ordinary action in the San Juan Part of the Superior Court against appellant and the rest of the Succession of Carmen Massari, civil case No. 10, for collection of the tax levied.

As a result of that complaint, and in order to secure the effectiveness of the judgment, an attachment was levied on the amount of $1,986.94 belonging to the Succession and

on a life annuity corresponding to appellant. In its answer to civil case No. 10, the Succession raised as special defenses (1) the nullity of the procedures respecting the notice of the deficiency, and (2) challenged the latter on the merits, alleging that the Treasurer had arbitrarily determined a minimum basic value far below its market value in 1913, and because since the value of the property was $70,000 and the sale had been carried out for $61,500, instead of a gain there was a loss of $8,500, the value of $36,661.96 assigned by the Treasurer being unacceptable.

Civil action No. 10 was decided on the merits on the basis of the facts stipulated and the evidence heard at the trial. The court passed upon all the questions raised and in litigation, including the nullity of the notice procedure and the attack on the merits of the deficiency, and concluded that no evidence had been presented to prove that the determination of the net income should be set aside. It rendered judgment on March 18, 1955, sustaining the tax assessment and levy. No appeal was taken from this judgment and the same became final and unappealable.

On October 16, 1958, appellant sued the Secretary of the Treasury, civil case No. 58-5697, for refund of the income tax, which is the action object of the present appeal. She alleged that on June 9, 1955, the collector demanded payment of the tax involved, and that on August 16 she paid the sum of $20 for credit against the receipt, and that on the same date she applied to the Secretary of the Treasury for refund of those $20 as well as of any other sums credited against the tax which may have been collected up to that date or which may be collected. An administrative hearing having been held, the Secretary of the Treasury denied the request for refund on the ground that the claim had already been decided by the court and therefore constituted res judicata.

In this action No. 58-5697 the parties stipulated that appellant's share of Carmen Massari's deficiency was 66.405 percent; that at the time of filing the complaint the sum of $8,206.94 had been paid, without including the tax withheld from appellant's salary in the University which had not been remitted to the Secretary of the Treasury, nor $2,700 which had been deposited with the clerk of the Superior Court. On August 22, 1960, the trial court rendered judgment on the merits and stated as follows:

"4. Defendant's answer raises the special defenses of res judicata and lack of jurisdiction of the court. The first is based on the fact that the controversies posed by the complaint, as clarified by the stipulation on the day of the trial, were definitively settled between the parties by virtue of the judgment rendered in case No. 10. The second is based on the fact that plaintiff cannot litigate the legality of the deficiency challenged by paying only a portion thereof and applying for its refund.

"5. The case having been set on the merits, the same was submitted on a stipulation of facts. From that stipulation it appears that defendant has not collected from plaintiff other taxes than those strictly determined in the judgment rendered in civil case No. 10, *supra*. It also appears from that stipulation that the payments made by plaintiff amount to $10,906.64 and not to $17,583.88, as alleged. At the trial defendant offered in evidence the complete record of civil case No. 10, *supra* for the purpose of raising the question of res judicata on the merits.

"In view of the foregoing, the court reaches the following conclusions:

"1. The developments following the judgment rendered in said case No. 10 having been eliminated by the said stipulation, it is clear that what plaintiff seeks to litigate now is the legality of the deficiency which was already adjudicated by the said judgment consented to by plaintiff. The situation is one of res judicata which precludes plaintiff from raising, and the court from resolving, the same questions already adjudicated by the said judgment. This would be sufficient to dismiss the action."

According to the above pronouncement, the trial court should be sustained, and on this point I differ from the

Court. The Secretary of the Treasury disallowed the refund administratively on the ground of res judicata, and the same approach was given before the trial court and now before this Court.

It is nonetheless a fact that the tax deficiency was judicially sustained in the judgment in civil action No. 10. Now, because the tax litigation is governed by provisions of special laws, the judicial adjudication in this case created a situation which went much farther than the doctrine of res judicata usually does in ordinary litigation. The reasons I have for reaching this conclusion are the following:

Act No. 232 of May 10, 1949, 13 L.P.R.A. § 261 (1962 ed.), provides that when any taxpayer believes "that he has paid or that there has been collected from him, unlawfully or unduly, or in excess of the amount due, a tax of any kind," he may apply to the Secretary of the Treasury for the reimbursement of such tax, subject to certain requirements provided by that Act. Act No. 235 of May 10, 1949, 13 L.P.R.A. § 282 (1962 ed.), established a uniform procedure to appeal to the Tax Court (now Superior Court), and provides in § 2 (6) with respect to tax refund that appeal may be taken to that court "from a decision of the Secretary of the Treasury denying the reimbursement of any tax," by filing a complaint in that court in the manner therein provided.

In addition to the foregoing, § 2 of Act No. 328 of May 13, 1949, which created the Tax Court, vested that court with jurisdiction to take cognizance of claims for taxes "collected by unlawful procedure or which voluntarily, or without notice from the Treasurer of Puerto Rico were paid unduly or in excess," the reimbursement of which is authorized by law and "is refused by the Treasurer of Puerto Rico"; and it is expressly provided that the jurisdiction of the court may not be pleaded "until there has been a proper administrative decision in the matter on the part of the Treasurer of Puerto

Rico in accordance with law." And § 13(a) of the Judiciary Act of 1952 provides that the Superior Court shall have cognizance of all cases, etc., in connection with or affecting the levy, collection . . . of all kinds of taxes . . . as well as of claims for taxes "collected by unlawful procedure or which . . . were paid unduly or in excess," the reimbursement of which has been refused by the Secretary.

From those legal provisions it will be seen that the problem is not only the common problem of res judicata, but also a more serious one of lack of jurisdiction over the matter on the part of the Secretary in the administrative field, and also lack of jurisdiction of the trial court over the matter and, hence, of this Court on review. This is so because the tax sought to be recovered and which gives rise to this proceeding had been judicially adjudicated by final, unappealable and executory judgment of a court acting with jurisdiction. In other words, after judgment was entered in civil action No. 10 sustaining the propriety and collection of the tax in question, this tax was no longer an illegal or improper tax, or in excess of the amount due, and administratively the Secretary of the Treasury lacked jurisdiction to entertain a request for refund on the merits, according to above-copied legal provisions. That tax, as judicially adjudicated in civil action No. 10 by final and unappealable judgment, was money belonging to the public treasury of Puerto Rico; only its execution and collection was proper, and the Secretary of the Treasury was without power to order its refund under new administrative criteria on the ground that it was unlawful or in excess of the amount due.

Since the jurisdiction of the court cannot be invoked or used unless there is already an administrative determination on the matter, as required by law, in the action for refund the court as well as the Secretary lacked jurisdiction over the matter and there could be only one pronouncement to this effect. In view of the special procedures governing

this type of tax litigation, any further consideration as to whether or not these taxes, sustained by a final and unappealable judgment, were unlawful, improper or excessive, was prohibited both administratively and judicially.

The trial court, notwithstanding it had correctly disposed of the case, unnecessarily and without jurisdiction, in my opinion, entered into other considerations involving the rule announced in *Flora* v. *United States*, 357 U.S. 63, 362 U.S. 145 (on reconsideration). This Court also decides the matter on the rule laid down in *Flora.*

In view of the fact that the much-discussed and controvertible *Flora* case, as correctly stated by Mr. Justice Belaval in his opinion, does not involve any constitutional pronouncement which may be binding upon us, but merely a statutory construction of federal tax laws; in view also of the fact that as a result of the application of *Flora* this Court has been compelled to overrule our case law which responded to a public policy of local interest; notwithstanding the *Flora* decision was issued in 1958, our Legislature, which annually deals with tax legislation, has not amended our laws in order to render ineffective the cases of *Anglade* v. *Sec. of the Treasury*, 79 P.R.R. 785 (1957), and *Inter-American Orange Crush* v. *Sec. of the Treasury*, 81 P.R.R. 302 (1959), which are now overruled; and that there has been a marked, local, legislative norm to permit and facilitate the partial payment of taxes without expressly requiring that they be paid in full if litigation is desired, I reserve to myself any views on this aspect of the case until the occasion for facing it shall be unavoidable.

I believe that the judgment appealed from should be affirmed on the basis of res judicata as well as lack of jurisdiction over the matter both administratively and judicially, since once the tax was sustained in civil action No. 10 by final and unappealable judgment for The People of Puerto Rico, it was no longer illegal or improper, or in excess of

the amount due, which are the only grounds upon which the State authorizes the claim and litigation of a refund.

Of course, if in the execution of the judgment entered in case No. 10 any amounts are collected in excess of those adjudicated thereunder, appellant has a remedy either within the foreclosure proceeding or in some other way. This is not the situation in this case, as concluded by the trial court and by this Court, since the taxpayer had not fully paid her part of the tax.

In view of these considerations and for no reasons, I am of the opinion that the judgment appealed from dismissing the complaint should be affirmed.

—o—

Separate opinion of MR. JUSTICE BELAVAL concurring in the opinion of MR. JUSTICE SANTANA BECERRA.

San Juan, Puerto Rico, November 30, 1965

I concur in the statement of facts and the doctrine of res judicata as stated in the opinion of Mr. Justice Santana Becerra. In the case of a refund, or a civil action in the nature of a refund, I do not agree with the principle established in the majority opinion in the sense that, since the full amount of the income tax was not paid, plaintiff-appellant has no right to recover any tax which she may have unduly paid.

According to the facts set out in the majority opinion, plaintiff-appellant owed the sum of $14,207.25 of which she had paid $10,906.94 in different instalments. According to our former case law, when the tax has been paid in specified instalments or such a situation arises from the manner in which the distraint proceeding has been effected, the taxpayer was not bound to pay the full amount of the instalments before applying for refund of that portion which he believed he had paid in excess of the amount due, or which

had been illegally collected from him. *Anglade* v. *Sec. of the Treasury*, 79 P.R.R. 785, 788 (Belaval) (1957); *Inter-American Orange Crush* v. *Sec. of the Treasury*, 81 P.R.R. 302, 304 (Per Curiam) (1959).

In overruling our former case law, the Court relies on *Flora* v. *United States*, 357 U.S. 63, 66, 72–75 (Warren) (1958). *Flora* is an interpretation of the legislative intention of certain tax laws of the United States which cover from the refund statute of 1866 up to the creation of the Board of Tax Appeals of 1924, and does not contain any constitutional doctrine worth our special deference. Mr. Justice Whittaker dissented from the majority opinion. We notice that no reference is made in our opinion to the second consideration of *Flora* v. *United States* (on reconsideration), 362 U.S. 145, 178–98 (Warren) (1960), in which Associate Justices Whittaker, Frankfurter, Harlan and Stewart dissented from the majority rule, the majority of 5–4 being composed only of Justices Warren, Black, Douglas, Clark and Brennan.

In the first decision at p. 75 Mr. Chief Justice Warren, in answer to the argument that the part-payment remedy was necessary for the benefit of the poor taxpayer, states as follows: "It is suggested that a part-payment remedy is necessary for the benefit of a taxpayer too poor to pay the full amount of the tax. Such an individual is free to litigate in the Tax Court without any advance payment. Where the time to petition that court has expired, or where for some other reason a suit in the District Court seems more desirable, the requirement of full payment may in some instances work a hardship. But since any hardship would grow out of an opinion whose effect Congress in successive statutory revisions has made no attempt to alter, if any amelioration is required it is now a matter for Congress, not this Court."

Those or similar words was what prompted the justiciable mind of our Legislative Assembly, because in adopting

the Income Tax Act of 1954—§ 272 (b) (3)—the following remedy for partial payment of deficiencies was provided: "In the case of a taxpayer who appeals from the judgment of the Superior Court upholding a deficiency and is unable to pay the deficiency or is able to pay only part thereof, the Superior Court may order, provided that the appeal involves a substantial question and subject to the provisions hereinafter set out, that the appeal follow its course until its final disposition on its merits without payment of the total amount of said deficiency. In such case the taxpayer shall file with his writ of appeal in the Superior Court a petition stating the reasons for his inability to pay the deficiency in whole or in part and the facts on which he bases his claim that the appeal involves a substantial question. Should the Superior Court determine that the taxpayer is unable to pay the deficiency or is able to pay only part thereof, and that the appeal involves a substantial question, it shall order instead of the total payment, as the case may be, (A) that the appeal continue its course under the bond filed on appeal to the Superior Court if it is sufficient to answer for any deficiency that may be finally determined plus interest; or (B) that the taxpayer file a new bond to the satisfaction of the Court in an amount sufficient to answer for the deficiency plus interest for a reasonable period; or (C) that the taxpayer pay part of the deficiency and the unpaid remainder be bonded in the manner provided previously in subparagraphs (A) and (B). In the case of a taxpayer that has been relieved of the duty to file a bond in order to litigate his case in the Superior Court and who shows that he is unable to pay the tax, nor file a bond, if the appeal involves a substantial question, the Superior Court shall direct that the appeal be allowed and continued for payment or filing of bond." See IV-IV Journal of Proceedings 2152–53 (1954), where it is stated that:

"Among the provisions to serve as relief to citizens, including the poor and the middle-class families and the owners of small businesses, it is well to point out . . . .

"The provisions of a procedural nature, both for the *collection* and the *settlement of controversies* under the Income Tax Act, include:

"Provisions permitting the litigation of the tax in the Superior Court without giving bond, or giving a bond in an amount less than that determined by the Secretary of the Treasury, and provisions permitting appeal to the Supreme Court without making full payment, or by payment of only a portion, of the tax and the giving of bond, and in certain cases, without payment and without bond.

"These provisions constitute a true step of advancement in the existing legislation, and protect the taxpayer in the event of inability to avail himself of a forum to challenge the *validity* or *correctness* of the tax assessed, both in first instance and on appeal, for reasons extraneous to the intrinsic *validity* or *correctness* of the assessment, such as the impossibility, at a certain moment, to give bond or to effect payment of the tax."

There is no question that a provision such as this did not exist in the federal law at the time of the decision of *Flora*. See the Federal Internal Revenue Act of May 28, 1938, 26 U.S.C.A. § 272 (pp. 1102–05).

This is not the most appropriate case for determining definitively whether § 272 (b) (3) of the Income Tax Act of 1954 applies only to a special refund case, as the same is established within the special tax procedure, or whether it includes any "collection" or "settlement of controversy" on the "validity" or "correctness" of the tax assessed, according to the new provisions included in the legislative history of § 272 (b) (3).

Since the question is in some way related to the right of appeal, the law governing such right is the law in force at the time of rendering judgment. In *Anglade*—a case covering deficiencies for tax years 1941 to 1944—the judgment

was rendered by the Superior Court of Puerto Rico, San Juan Part, on February 12, 1954, and affirmed by this Court on March 19, 1957, that is, prior to the first opinion in *Flora* of June 16, 1958. At the time of deciding the *Anglade* case, we could have chosen any or none of the persuasions of the American case law in order to establish our own rule. In *Orange Crush*—a case covering deficiencies for tax years 1947 to 1949—judgment was rendered by the Superior Court of Puerto Rico, San Juan Part, on June 18, 1954, and reversed by this Court on April 30, 1959, that is, subsequent to the first decision in the *Flora* case; however, since reconsideration was granted, the second decision affirming the former 5 to 4 was not handed down until March 21, 1960, that is, subsequent to our decision in *Orange Crush*.

The proper thing would have been to decide that until June 29, 1954, when our Income Tax Act of 1954 went into effect, any appeal from a former judgment in a typical action for refund, or any civil action in the nature of an action for refund, in the case of a tax paid in specified instalments, or inferred instalments, should be governed by our decisions in *Anglade* and *Orange Crush* permitting appeal without full payment of the tax assessed, and from and after June 29, 1954, it should be governed by § 272 (b) (3) of our Income Tax Act of 1954, which permits appeal in those cases in which the taxpayer proves that he is unable to pay the full amount of the tax or to guarantee the full amount by bond.