COVEY INVESTMENT COMPANY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 8706.

United States Court of Appeals Tenth Circuit.

May 12, 1967.

Lynn S. Richards and Harold H. Hart, Salt Lake City, Utah (Lon Rodney Kump, Salt Lake City, Utah, on the brief), for appellant.

William A. Friedlander, Attorney, Department of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Washington, D. C., Attorneys, and William T. Thurman, U. S. Atty., of counsel, on the brief), for appellee.

Before LEWIS, BREITENSTEIN and HICKEY, Circuit Judges.

DAVID T. LEWIS, Circuit Judge.

■ The question presented is whether the District Court for the District of Utah erred in holding that certain notes executed by the appellant taxpayer represented equity investments rather than corporate debts during the tax years 1959–1962. Taxpayer during the subject years had deducted from its annual gross income amounts designated as interest on an indebtedness of $365,000, asserted to exist in the outstanding and overdue notes.[1] The Commissioner disallowed the deduction, taxpayer paid the deficiency in full, and then filed this action to recover the amount so paid. See Flora v. United States, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165. The District Court sustained the Commissioner's determination and dismissed the action. This appeal followed. Since the basic evidentiary facts are not in substantial dispute, our inquiry is limited to a consideration of whether the trial court has premised its judgment upon proper and permissible conclusionary inferences drawn from the evidence and leading to findings of ultimate fact. It is of course fundamental that this court will not disturb the judgment of the trial court when conflicting reasonable inferences may be drawn from the evidence. McSorley's, Inc. v. United States, 10 Cir., 323 F.2d 900.

Taxpayer, Covey Investment Company, was organized under the corporation laws of Utah in 1904[2] to engage in the construction and rental of apartment build-

1. Section 163(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 163(a) provides that "[t]here shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."

2. While the appeal was pending, the corporation was dissolved and the former stockholders created in its place a limited partnership using the corporate name. This fact has no bearing on the

ings and other commercial business establishments. The corporation's initial authorized capital of $100,000 was increased to $200,000 in 1906. Between 1904 and 1916, the corporation financed its construction program through commercial lending institutions and advances from individual stockholders. The advances from stockholders were such that by the end of 1917 they amounted to almost $300,000, as evidenced by numerous corporation notes bearing interest at seven percent. Effective January 1, 1918, in consideration for the surrender of the seven percent notes plus additional advances to meet construction costs, the corporation issued to its stockholders $365,000 in new notes and 192 shares of common stock. The new notes, which were to mature in ten years, bore ten percent interest for the first two years and twelve percent thereafter. They were issued to each of the six stockholders in direct proportion to the number of shares held and entered upon the books of the corporation as "notes payable." The note instruments provided, among other things, that upon maturity the corporation would have the option of paying off the principal either in cash or in stock.[3]

Because of a lack of sufficient liquid assets, the notes were not paid on or before the maturity date of January 1, 1928. Nor did the corporation exercise its option to pay off the notes in stock. Rather, it simply continued to pay to its stockholders the twelve percent interest and, with the exception of the depression years when the rate varied from four to ten percent, maintained that practice through the end of 1962. In the meantime, the corporation borrowed and then repaid over two million dollars in new loans at interest rates varying from 3¾ to twelve percent and, again with the exception of the depression years, pursued a policy of paying to its stockholders liberal cash dividends. During the period 1950 through 1955, the corporation loaned over $330,000 to its three principal stockholders on their personal notes bearing interest at only five percent.

Interest deductions were claimed by the corporation with respect to the 1918 notes on each of its annual income tax returns, and until 1959 these deductions were allowed by examining agents whenever a return was audited. But as already mentioned, the Commissioner later determined that although the notes had been cast in the form of debts, they in fact represented contributions of risk capital. The interest deductions were thereupon disallowed for the years 1959–1962 inclusive, resulting in a total assessed tax deficiency of some $104,626.

The factors premising the judgment of the District Court may be summarized as follows:

(1) the $365,000 was easily traced to the cost of acquiring portions of the initial capital plant;

(2) the corporation had an absolute option for ten years to convert the $365,000 principal into a stockholding interest;

(3) the notes were held by the stockholders in proportion to equity;

(4) the stockholders placed their equity interests ahead of their credit interests whenever it suited the needs of the corporation;

(5) the noteholders forgave the taxpayer's obligation to pay a full twelve percent interest upon the notes during the depression years and accepted a rate as low as four percent in 1933 and a gradually increasing rate until full restoration of the twelve percent in 1943; and

consideration or disposition of the case, but the motion of appellant to join the partnership as appellant is granted. We do not consider it necessary to amend the style of the case.

3. At the date of issuance, more than 97% of the outstanding shares was held by three brothers who also were the principal officers of the corporation.

(6) the borrowing, lending and dividend policies of the corporation in later years were not, under all of the circumstances, those of a conscientious debtor dealing at arm's length with independent interests.

In addition, there was written evidence found among the books and records of the corporation indicating an intent to regard the notes as preferred stock rather than as debts.[4]

Appellant challenges the significance of each of these points and, with supporting authority, urges that no one of them may be dispositive of the crucial questions of fact. Argumentative emphasis is also placed upon the fact that this is not a typical "thin" corporation case; that the good faith of the parties, corporate or individual, is not questioned; that no tax avoidance motivation is indicated; and that the examining agents' allowance of interest deductions continued unbroken until 1959.

█ We believe that taxpayer's appellate claims can rise no higher than to show that certain factors in the corporation's financial history lend some support to its claim. Other factors do not. In view of the established principles governing taxpayers' claims to interest deductions, its burden of proof in such regard, McSorley's, Inc. v. United States, supra, and authorities cited, and the trial court's careful consideration of the composite history of the subject transactions up to the date of the deficiency assessment, we hold the record plainly to support the findings and conclusions of the District Court. The judgment is accordingly

Affirmed.

---

4. This evidence consisted of a letter addressed to a commercial lending institution and stated in part:
   "We might add that instead of increasing our Capital Stock some years ago that all Stockholders were given Notes pro rata with their stock ownership which notes aggregate $365,000.00 and were made payable either in Stock or cash at the option of the Company. While these have not been changed since issued they are regarded by us like preferred stock and not as an obligation."
   There was no evidence that the letter was actually sent to the bank and the trial court indicated that it would render the same judgment absent the exhibit.