FORMER EMPLOYEES OF HEWLETT-PACKARD CO., PLAINTIFFS *v.*
UNITED STATES, DEFENDANT

Court No. 92–02–00072

(Dated January 21, 1993)

*Edward P. Van Pelt, pro se,* for plaintiffs.
*Stuart M. Gerson,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, *(Jane E. Meehan),* *Scott Glabman,* of counsel, United States Department of Labor, for defendant.

## MEMORANDUM AND ORDER

GOLDBERG, *Judge:* Plaintiffs, former employees of Hewlett-Packard Company, challenge the determination of the Secretary of Labor ("Labor") that they are ineligible for trade adjustment assistance under 19 U.S.C. § 2272(a)(1) (1988). *Koh-l-Noor Rapidograph, et al.,* 56 Fed. Reg. 58711 (Dept Labor 1991) (Negative Eligibility Determination); *Hewlett-Packard Co., Rockaway, N.J.,* 56 Fed. Reg. 67103 (Dept Labor 1991) (Application for Reconsideration Dismissal). This Court has jurisdiction pursuant to 19 U.S.C. § 2395 (1988) and 28 U.S.C. § 1581(d)(1) (1988).

After considering the argument of the parties and the administrative record, the court holds that the determination by Labor should be remanded. The court holds that Labor's determination is not in accordance with the law.

## BACKGROUND

On October 2, 1991, a petition for certification for trade adjustment assistance ("TAA") benefits pursuant to 19 U.S.C. § 2271 (1988) was filed with Labor by Mr. Edward P. Van Pelt, a former employee of Hewlett-Packard's plant in Rockaway, New Jersey, representing approximately thirty-four former workers in the metal fabrication shops of Hewlett-Packard's Rockaway plant. Workers in these shops produced chassis and hardware components of the equipment manufactured by the plant. According to the petition, the anticipated date of separation of the workers was January 31, 1992.

Labor initiated an investigation with regard to the petition. On October 17, 1991, Labor requested data from Hewlett-Packard for its investigation. Hewlett-Packard responded by letter dated November 1, 1991 and indicated that Hewlett-Packard had not involuntarily terminated any employees. Hewlett-Packard therefore requested that further participation by it be excused.

Based upon the results of its investigation, Labor issued its determination on November 8, 1991, denying the petition for worker certification. Labor stated that criterion (1) of section 222 of the Trade Act of 1974, 19 U.S.C. § 2272 (a)(1) (1988), was not satisfied because Hewlett-Packard had not separated workers at the Rockaway plant.

On November 26, 1991, Mr. Van Pelt requested administrative reconsideration of Labor's denial of TAA certification, arguing that Labor's decision had not properly taken into account that the jobs of the employees who took the voluntary severance package were eliminated and that no jobs at comparable skill levels or pay were available within the company. Labor dismissed the application on December 11, 1991 for lack of sufficient evidence pursuant to 29 CFR § 90.18(C). Labor found that:

> there were no involuntary layoffs at Rockaway. The company offered an Enhanced Early Retirement Program and a Voluntary Separation Incentive package in 1991 to the Rockaway employees. The distinguishing feature of each program was a voluntary decision to leave in return for separation benefits. No employee was involuntarily terminated and all could have continued their employment with Hewlett Packard.

This dismissal constituted a final determination for purposes of judicial review.

Petitioner filed for judicial review on February 5, 1992, within 60 days from the date Labor's decision was published in the Federal Register.

## CLAIMS

Plaintiffs contend that Labor wrongly denied certification for TAA benefits because it failed to take into account the job elimination aspect of the voluntary separations. Plaintiffs concede that the company did not separate workers without providing for alternate positions within the company. Rather, plaintiffs complain that the alternative positions provided by the company with respect to workers in the metal fabrication shops were not at comparable pay or skill levels.

Defendant argues that the workers were not severed or suspended from pay status by the company, but left voluntarily in order to take advantage of the company's severance offer. According to defendant, all of the workers could have continued employment with the company. Consequently, plaintiffs were not "totally" or "partially" separated within the meaning of the statute and the implementing regulations.

## STANDARD OF REVIEW

A negative determination by Labor denying certification of eligibility for TAA benefits will be upheld if it has been made in accordance with the law, and is supported by substantial evidence contained in the administrative record. *See Woodrum v. Donovan,* 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), *aff'd sub nom. Woodrum v. United States,* 2 Fed. Cir. (T) 82, 737 F.2d 1575 (1984).

## DISCUSSION

Pursuant to 19 U.S.C. §§ 2272(a) (1988), the following eligibility requirements must be met in order to qualify for TAA certification:

> (a) The Secretary shall certify a group of workers (including workers in any agricultural firm or subdivision of an agricultural

firm) as eligible to apply for adjustment assistance under this part if he determines—

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially **separated**, or threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272(a) (1988) (emphasis added).

The question before the court is whether Labor, in deciding that plaintiffs are ineligible for TAA certification because the terminations were voluntary, properly interpreted and applied the term "separated" within the meaning of 19 U.S.C. § 2272(a)(1) (1988).

Referring to the implementing regulations issued by Labor, defendant argues that "total separation" means "the layoff or severance of an individual from a firm or an appropriate subdivision thereof." 29 C.F.R. § 90.2 (1992). A "layoff" is defined as "a suspension from pay status for lack of work initiated by the employer and expected to last for no less than seven (7) consecutive calendar days." 29 C.F.R. § 90.2 (1992). Defendant contends that voluntary separations with benefits or the acceptance of lower paid positions are not separations within the meaning of 19 U.S.C. § 2272(a)(1) (1988) and the implementing regulations.

However, when construing a statute, the duty of the court "is to give effect to the intent of Congress." *Woodrum*, 5 CIT at 194 (quoting *Flora v. United States*, 357 U.S. 63, 65 (1958)). "The court must seek to discern the legislative will, first, by reference 'to the literal meaning of the words employed'." *Woodrum*, 5 CIT at 194 (quoting *Flora v. United States*, 357 U.S. 63, 65 (1958)). If a literal reading of the disputed provision does not answer the question presented, either because the text is ambiguous or silent as in the present case, the court may look to the entire statutory scheme and to the provision's legislative history in an effort to resolve the question before it. *Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp.*, 545 F.2d 754, 756–57 (1st Cir. 1976), *cert. denied*, 431 U.S. 904 (1977).

Clearly "[t]he interpretation put on the statute by the agency charged with administering it is entitled to deference * * *." *Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 31–32 (1981). The courts, however, "must reject administrative constructions of the statute, whether reached by adjudication or rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." *Federal Election Commission*, 454 U.S. at 32.

When Congressional policies extend beyond the scope of the law enacted, it is the legislature that must provide the remedy and not the courts whose task it is to apply the law. *United Shoe Workers v. Bedell,* 506 F.2d 174, 187 (D.C. Cir. 1974).

In determining the proper construction and lawful bounds of the statute in question, the court in *Woodrum,* 5 CIT at 198, found that the remedial nature of the TAA program requires a liberal construction of the statute. Furthermore, in *Former Employees of Parallel Petroleum Corp. v. United States Secretary of Labor,* 14 CIT 114, 119, 731 F.Supp. 524 (1990), this court stated that Congress intended the Trade Act of 1974 "to *liberalize* the availability of adjustment assistance for displaced workers." Moreover, the court also stated that:

> [t]he Court also considers the purposes behind the [TAA] program to be instructive. These benefits are intended to offer unemployment compensation, training, job search and relocation allowances, and other employment services to workers who lose their jobs because of import competition. Without these benefits, workers in many cases would not possess the financial resources nor even the most basic skills necessary to seek employment in new industries. Congress did not propose to subject these workers to endless arguments about legislative intent and definitions of terms in the United States Code, thereby delaying indefinitely the award of any compensation that might eventually be forthcoming. Such delays defeat the remedial purposes of the statute.

*Id.* at 118 (citation omitted).

Further, the legislative history of the TAA program does not provide any evidence that Congress has made a policy decision and drawn a line between involuntary and voluntary separations that occur in connection with job elimination due to import competition.

The purpose of the TAA program is to offset the negative affects on the work force whose jobs the company has eliminated. Congress intended to "encourage workers who are unemployed because of import competition to learn the new skills necessary to find productive employment in a changing American economy." S. Rep. No. 71, 100th Cong., 1st Sess. 11 (1987). The program is thus remedial in nature.

Labor's mechanical interpretation of the term "separation" to disqualify workers whose jobs have been eliminated and who leave an affected company voluntarily to take advantage of voluntary incentive programs contradicts the remedial scope intended by Congress. Under Labor's theory, the affected firm would have to fire those workers whose jobs have been eliminated to avoid prejudicing their eligibility for certification. As a result, TAA eligibility becomes a factor in the affected company's decisions leading up to the separations. The court finds that issues regarding whether an affected company should reduce its labor force on a voluntary basis or under circumstances where the company fires those individuals that are to be laid off are business decisions that must be based upon the company's particular situation. There is no evi-

dence in the legislative history that Congress intended the TAA program to impinge on the business decisions involved in the downscaling process in such a manner.

Similarly, exclusion of voluntary incentive programs from eligibility causes the TAA program to act as a barrier to company based adjustment programs that seek to soften the blow for workers adversely affected by job elimination. Considering the purpose of the statute, such employer initiatives should be commended rather than discouraged.

Moreover, there is no basis in the statute for Labor's interpretation that affected employees who refuse to transfer to non-comparable employment outside their downsized departments, but still within the company, are not "separated" within the meaning of the statute. Labor's own implementing regulations define total separation in part, simply as the layoff "from an appropriate subdivision" of the company. 29 CFR § 90.2 (1992).

Clearly, here Labor determined that the metal fabrication shops was the appropriate subdivision for its investigation. (Confidential Record at 15.) Labor also determined that plaintiffs' jobs within the metal fabrication shops were eliminated. Plaintiffs, therefore, were laid off from "an appropriate subdivision" of the company, and were separated. Consequently, the court concludes that the terminations in the instant case were "separations" within the meaning of 19 U.S.C. § 2272(a)(1) (1988).

### CONCLUSION

After considering the arguments of the parties and the administrative record, the court holds that the determination by Labor was not in accordance with the law and should be remanded to allow Labor to determine if the remaining certification requirements under 19 U.S.C. § 2272 (1988) are met.