# In the United States Court of Federal Claims

No. 13-229T
(Filed: November 8, 2013)

```
*************************************
JEREMIAH HARRIS,                      *
                                      *     RCFC 12(b)(6); Tax Refund Suit;
               Plaintiff,             *     Economic Reality; No Funds on
                                      *     Which Instrument Draws;
v.                                    *     Redemption Theory
                                      *
THE UNITED STATES,                    *
                                      *
               Defendant.             *
*************************************
```

Jeremiah Harris, Kennesaw, GA, pro se.

David R. House, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

     In this tax refund action, plaintiff Jeremiah Harris asks the court to award a refund in the amount of $334,082 for the taxes he claims were paid to defendant. However, plaintiff did not pay to the United States Treasury the monies he now seeks to have refunded, and therefore the court dismisses plaintiff's complaint for failure to state a claim upon which relief can be granted.

## I. BACKGROUND

     This case arises out of plaintiff's filing in September, 2011 of an amended tax return for the 2010 calendar year using the Internal Revenue Form 1040X.[1] Plaintiff claimed the reason for his filing was "[a]mending . . . Form 1099 changes." Compl., Ex. 1. In his Form 1040X, plaintiff reported $485,000 in taxable income and that the entire amount had been withheld.[2] Id. Attached to the Form 1040X was Schedule B which reported three interest payments plaintiff received from "C E Warrington" in the amounts of $350,000, $75,000, and $60,000. Id. Plaintiff's Form 1040, which was attached to his Form 1040X, stated that the $485,000 in income was withheld in its entirety as reported on from "Forms 1099-INT, DIV and OID," but

---

[1] Neither party has provided a signed and dated copy of plaintiff's 2010 tax return or the signed and dated Form 1040X.

[2] While plaintiff did not attach a copy of his tax return to his amended complaint, he did attach a copy to the original complaint and the court will look to the original complaint.

copies of those filings were not provided. The filings attached to plaintiff's complaint provide no other information about this $485,000 payment. Plaintiff accordingly claimed a refund in the amount of $340,879. Id.

By letter dated November 18, 2011, the Internal Revenue Service ("IRS") responded to plaintiff's 1040X filing. Am. Compl., Ex. 2. The letter explained that in processing the amended return, the IRS "made some corrections to [his] Form 1040X which may have affected" the amount that plaintiff was eligible to receive in refund. Id. The IRS reduced the amount potentially refundable to $334,082. Am. Compl. ¶ 12; Am. Compl., Ex. 3. The IRS letter also informed plaintiff that "[i]f the adjustment results in a refund . . . [he should] get a refund of [his] overpayment in four to six weeks." Am. Compl., Ex. 2. On December 5, 2012, the IRS mailed plaintiff a notice indicating that he should receive $334,082 within two to three weeks. Compl., Ex. 4. According to plaintiff, the promised refund was never received. Plaintiff contacted the IRS and "was informed that a freeze hold, which no agent could explain, had been placed on the refund which presently sits in the account." Am. Compl. ¶ 17. Plaintiff alleges that he made numerous telephone calls, visits, and written correspondence to the IRS to receive his refund, but that the refund has never been paid.

However, according to the Amended Complaint, on November 26, 2012, plaintiff mailed a "Notice to Fiduciary" to the Secretary of the Treasury. Am. Compl. ¶¶ 29-33; see also Compl., Ex. 4 (copy of the "Notice"). This notice purported to assign to the Secretary of the Treasury a Uniform Commercial Code ("U.C.C") Article 3 instrument, "Registered Security RB 591 446 200 US, instrument No. 1004" in the amount of $485,366. Id. at ¶ 31; see also Compl., Ex. 5 (attaching a copy of the instrument).

In an affidavit attached to his original complaint, plaintiff explains that his $485,000 in interest payments come from a "Pure Naked Trust" that was created in his favor at birth, "resulting by defacto technical definition in a certain widely held fixed investment trust (WHFIT) . . . ." Pl.'s Aff. ¶ 3. Plaintiff claims to be the "Beneficial Owner of the WHFIT of the JEREMIAH ELIJAH ALEXANDER HARRIS Estate . . . " Id. at ¶ 7. Plaintiff provides no information concerning where such a trust is held, who the trustees are, or where the trust is located. Plaintiff does, however, aver that "instructions on how to report a private issue debt instrument with OID does not exist in [IRS Regulation 1.1271 through 1.275 of Title 26 ] . . . ." Id. at ¶ 21. Plaintiff alleges that he issued a valid U.C.C. Article 3 instrument that drew on his "Pure Naked Trust" and "was issued in purview of Public Policy [House Joint Resolution 192]" and various provisions of the U.C.C. Id. at ¶ 41. Plaintiff also alleges that this instrument was accepted by the Secretary of the Treasury. Id. at ¶¶ 39, 42-46.

On April 1, 2013, plaintiff filed a "Complaint for Just Compensation of Taxes" to recover his tax refund. On June 13, 2013, plaintiff filed a motion for leave to file an amended complaint, which was granted by the court on June 17, 2013 pursuant to Rule 15(a)(1)(B) of the Rules of the United States Court of Federal Claims ("RCFC").

Defendant filed a motion to dismiss on June 26, 2013. The parties have completed briefing and oral argument is unnecessary.

2

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998); see also Matthews v. United States, 72 Fed.Cl. 274, 278 (2006) (subject matter jurisdiction is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case"). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). The parties or the court sua sponte may challenge the court's subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

### B. Pro Se Plaintiffs

A pro se plaintiff's complaint, "'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' . . . ." Hughes v. Rowe, 449 U.S. 5, 10 n.7 (1980) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam)). Courts have "strained [their] proper role in adversary proceedings to the limit, searching . . . to see if plaintiff has a cause of action somewhere displayed." Ruderer v. United States, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Although plaintiff's pleadings are held to a less stringent standard, such leniency "with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); see also Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for pro se litigants only."); Bernard v. United States, 59 Fed. Cl. 497, 499 (noting that pro se plaintiffs are not excused from satisfying jurisdictional requirements), aff'd, 98 F. App'x 860 (Fed. Cir. 2004).

### C. Motion to Dismiss

Defendant moves to dismiss the complaint for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). "A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy." Indian Harbor Ins. Co. v. United States, 704 F.3d 949, 954 (Fed. Cir. 2013) (citing Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002)). "When considering an RCFC 12(b)(6) motion, the court "must determine 'whether the claimant is entitled to offer evidence to support the claims,' not whether the claimant will ultimately prevail." Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v Fitzgerald, 457 U.S. 800, 814-19 (1982)). "A motion made under Rule 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced." RhinoCorps Co. v. United States, 87 Fed. Cl. 481, 492 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2006)).

"Deciding whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). Neither allegations "that are 'merely consistent with' a defendants liability," nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are sufficient. Id. A court may dismiss a complaint for lack of jurisdiction when it is "wholly insubstantial and frivolous." Bell v. Hood, 327 U.S. 678, 682-83 (1946).

"The court assumes all well-pled factual allegations are true and indulges in all reasonable inferences in favor of the nonmovant." Terry v. United States, 103 Fed. Cl. 645, 652 (2012) (citing United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. A failure to allege a cause of action upon which relief can be granted warrants a judgment on the merits rather than a dismissal for want of jurisdiction. Litecubes, LLC v. N. Light Prods., Inc., 523 F. 3d 1353, 1361 (Fed. Cir. 2008).

## III. DISCUSSION

Plaintiff claims that the court has jurisdiction pursuant to 28 U.S.C. §§ 1491 and 1494(1)(3) (2006). Under precedent from the United States Supreme Court, in suits for tax refunds in the United States Court of Federal Claims, the plaintiff must first pay the tax assessed in full before suing for refund. Flora v. United States, 357 U.S. 63, 75 (1958). Plaintiff cannot prove that he paid the tax in question and thus this court has no jurisdiction to consider his claim.

Plaintiff alleges that he paid his taxes when he sent his Article 3 instrument, "Registered Security RB 591 446 200 US, instrument No. 1004" to the Secretary of the Treasury. But plaintiff has provided no evidence that his instrument actually paid anything. Rather, plaintiff's putative instrument, complaint, and supporting affidavit demonstrate that he is using the "redemption theory" to claim his refund. Plaintiff has offered a document sent to the Secretary of the Treasury that purports to be a negotiable instrument, but the court is not convinced that this instrument is legitimate. See Bryant v. Wash. Mut. Bank, 524 F. Supp. 2d 753, 758 (W.D. Va. 2007). As plaintiff explains, a "Pure Naked Trust" was granted in his favor at birth. What plaintiff does not explain, but which the Bryant opinion does, is that this "trust account" and instruments drawing on it has a complicated back story which reveals that his instrument is valueless:

> The foundation of Plaintiff's claim is equal parts revisionist legal history and conspiracy theory. . . . [According to this theory, t]he federal government . . . has tricked the populace into becoming U.S. citizens by entering into "contracts" embodied in such documents as birth certificates and social security cards. With these contracts, an individual unwittingly creates a fictitious entity (i.e., the U.S. citizen) that represents, but is separate from, the real person. Through these contracts, individuals also unknowingly

4

> pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship. However, the government cannot hold the profits it makes from this use of its citizens and their property in the general fund of the United States because doing so would constitute fraud, given that the profits technically belong to the actual owners of the property being pledged (i.e., the real people represented by the fictitious entities). Therefore, the government holds the profits in secret, individual trust accounts, one for each citizen.
>
> Because the populace is unaware that their birth certificates and such are actually contracts with the government, these contracts are fraudulent. As a result, the officers of government are liable for treason unless they provide a remedy that allows an individual to recover what she is owed – namely, the profits held in her trust account, which the government has made from its use of her and her property in the commercial markets. In 1933, the government provided just such a remedy with House Joint Resolution 192, and the Uniform Commercial Code (UCC) provides the means for a person to implement it. The fact that virtually no one is aware of this remedy or how to use it is all part of the government's scheme – if no one takes advantage of the remedy, the government can keep the money, so it is in the government's interest that the remedy be obscure. However, one such as Plaintiff, who learns of and is able to implement the remedy, can supposedly use the debt owed to her by the government to discharge her debts to third parties with Bills of Exchange that are drawn on her trust account.

Id. at 758-59 (footnotes omitted). Plaintiff in this case, like the plaintiff in Bryant, attempts to "redeem" the funds allegedly kept in a government trust account by making various U.C.C. filings. See Compl., Ex. 4 (attaching plaintiff's U.C.C. filings); see also Bryant, 524 F. Supp. 2d at 759 (discussing U.C.C. filings made by plaintiff in that case to "redeem" trust account).

Merely because plaintiff believes he possesses "redeemed" funds in a fictitious trust account allegedly created in his name does not mean that he has actually accomplished this alchemical feat. Indeed, plaintiff has not provided any reality-based averments or proofs that he actually paid the tax amount for which he now seeks a refund. His intimation that he effectuated payment through his issuance of a fanciful negotiable instrument drawn on an actual account simply is not plausible. The court, applying judicial experience and most especially common sense, cannot make a "reasonable inference" that plaintiff paid any tax on the $485,366 purported instrument. See Iqbal, 556 U.S. at 678. The court has no jurisdiction to order a refund for a tax that was never paid.

To the extent that plaintiff is alleging that a contract exists between the United States and himself to release the amount frozen in his refund account, he must demonstrate the four

5

elements of a valid, enforceable contract: mutuality of intent, consideration, unambiguous offer and acceptance, and authority on the part of the government's representative to bind the government. Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003). Plaintiff cannot do so. For example, plaintiff argues that by defendant sending him two separate notices stating that a refund would issue within weeks, defendant's conduct evidences intent to enter into a contract. However, the freeze placed on plaintiff's account demonstrates defendant's lack of intent to enter into an agreement. Moreover, plaintiff did not plead any facts demonstrating defendant's unambiguous acceptance of plaintiff's offer to enter into a contract, nor that an IRS official with the requisite authority entered into a binding contract with plaintiff. Accordingly, there was no enforceable contract formed between the parties that laid the predicate for plaintiff's tax refund claim.[3]

In short, after reviewing plaintiff's complaint, the court finds that the factual allegations are so implausible and fanciful that they fail to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** defendant's motion to dismiss and **DISMISSES** plaintiff's complaint for failure to state a claim upon which relief can be granted. The clerk is directed to enter judgment accordingly. No costs.

**IT IS SO ORDERED.**

_____
MARGARET M. SWEENEY
Judge

---

[3] The court also lacks jurisdiction under 28 U.S.C. § 1494 because, even if the court construes plaintiff's filing of his Form 1040X as a request to settle an account, plaintiff has not satisfied the statutorily required three-year waiting period. See 28 U.S.C. 1494(2).